| 15b 517|
|151a 84|

HOUSE and others vs. THE CITY OF ROCHESTER.

The 193d section of the charter of the city of Rochester, which provides that the damages and recompense to be paid to owners of lands taken by the city for public improvements shall be assessed by three assessors, assigned by the common council, is in conflict with the provision of the constitution declaring that where private property shall be taken for public use, the compensation shall be ascertained by a jury, or by commissioners appointed by a court of record. And an assessment based upon that section is unauthorized and void.

The fact that the city has since paid the owners of lands taken under such a void assessment, the amounts ascertained by the assessors for their damages and recompense, and received conveyances of the land, cannot have a retroactive operation, so as to heal the defect and make valid a proceeding which was merely void.

DEMURRER to answer. The complaint stated that by an ordinance of the common council of the city of Rochester, passed December 10th, 1850, it was determined that Main-street should be continued and opened eastwardly, from the angle near N. Osborn's house, on the site of Summit-street, to the east line of the city of Rochester; and by the same ordinance it was declared that the estimated expense of the said improvement was $20,284; and after describing therein the lands deemed necessary to be taken for making the said improvement, and the lands deemed to be benefited thereby, and proper to be assessed therefor, appointed Isaac Loomis, Simeon S. Brown and Jonathan King, three of the assessors of said city, to inquire into the damages and recompense which the owners of the lands so deemed necessary to be taken for said improvement might sustain, by reason of the taking of said lands; and also to assess and apportion such damages and recompense, together with the costs and expenses attending the proceedings, upon the owners of the lands to be benefited by the said improvement. That in pursuance of the directions of said ordinance and resolution, the said assessors so appointed immediately thereafter proceeded to inquire into the said damage and recompense and to assess and apportion the same as aforesaid, and on the 4th day of February, 1851, made a report to the common council, accompanied by an assessment roll, or

schedule, by which it appeared that the said assessors had esti-
mated the damages and recompense of the owners of lands
through which the street would pass, when continued as afore-
said, at the sum of $19,172, in the aggregate, and had assessed
and apportioned the said damages, &c. together with the sum
of $188, of the costs and expenses aforesaid, upon the owners
of lands to be benefited by said improvement. That said
report together with the said estimate and assessment, was, on
the 11th day of February aforesaid, confirmed by the common
council. That by said assessment, so confirmed, the plaintiff,
Anson House, as the owner of a certain lot, was assessed the
sum of $175. That the plaintiff, Bartlett Flanders, as the
owner of a certain other lot was assessed the sum of $50. That
the plaintiff, Benjamin E. Hickok, as the owner of a certain
other lot was assessed the sum of $216; and that the plaintiff,
Horatio N. Curtiss, as the owner of certain other lots was
assessed the sum of $122. The complaint averred that the de-
fendant was proceeding by its agents and officers to collect from
the plaintiffs respectively, the several sums so assessed to them,
and that warrants had been issued by the treasurer of the de-
fendant pursuant to the directions of the city charter, to one of
the collectors of the city, for the collection of said sums; and
that such collector had actually levied upon the personal prop-
erty of the plaintiffs respectively, and had advertised the same
for sale, &c. for the purpose of satisfying said assessments.
The complaint prayed that the defendant might be perpetually
enjoined from proceeding to collect said sums from the plaintiffs,
and that the assessment and apportionment, so made and con-
firmed by said common council, might be declared and adjudged
void and invalid, &c.

The only statements in the answer, necessary to be here men-
tioned, are that after the confirmation of the report of estimate
and assessment stated in the complaint, and before issuing the
warrants to collect the assessments, the defendant paid the sev-
eral owners of lands deemed necessary to be taken for the im-
provement mentioned, the several amounts of damages assessed
or awarded to such owners for being deprived thereof, and re-

ceived conveyances from such owners respectively, for the same. That the whole sum of $19,360 was, before the warrant was issued for the collection thereof, actually paid or incurred by the defendant for the damages awarded to the owners of the lands taken, and for costs, expenses, &c. Other facts were set out in the answer, with a view of showing that the proceedings of the common council and other city authorities, were in conformity with the requirements of the defendant's charter.

To this answer the plaintiffs demurred.

*S. Mathews*, for the plaintiffs.

*H. Humphrey*, for the defendant.

*By the Court*, WELLES, P. J. The constitution of this state declares that "when private property shall be taken for any public use, the compensation to be made therefor, when such compensation is not made by the state, shall be ascertained by a jury, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law." (*Const. of* 1846, *art.* 1, § 7.) The 193d section of the act entitled, "an act to amend and consolidate the several acts relating to the city of Rochester," passed April 10th, 1850, (*ch.* 262, *of Sess. L. of* 1850,) provides that "the damages and recompense to be paid to owners of lands taken by the city for public improvements, shall be assessed by three assessors assigned by the common council," &c. The damages and recompense to the owners of the lands taken for the improvement in question, was ascertained by assessors assigned by the common council in pursuance of the section of the charter referred to. That section is plainly in conflict with the constitution, and the assessment based upon it was unauthorized and void. That the defendant afterwards paid the owners of the lands taken, the amounts ascertained by the assessors for their damages and recompense, and received conveyances of the lands, cannot have a retroactive operation so as to heal the defect and make valid a proceeding which was merely void. At the time the assessment was

made, there was no legal basis for it to rest upon; and the subsequent purchase by the defendant, and conveyance by the owners of the land taken, could, at most, be the foundation of a new or subsequent assessment, but would not authorize the issuing a warrant to collect the previous void assessments. For these reasons the plaintiffs should have judgment on the demurrer.

[CAYUGA GENERAL TERM, June 6, 1853. *Welles, Johnson* and *T. R. Strong,* Justices.]