## Clark *vs.* Miller.

That portion of the act of the legislature of December 14, 1847, (*Laws of 1847, ch.* 455,) which provides for the reassessment before a jury of the damages occasioned by the laying out of a highway, where they shall have been assessed in the first instance by the three commissioners appointed by the county court, as required by that act, is not in conflict with the constitution of this state.

The 7th section of the 1st article of the constitution is not a restriction upon the legislative power to provide for a reassessment of damages in such a case, before a jury, after they have been once assessed by commissioners, under the statute.

THE commissioners of highways of the town of Southport, in the county of Chemung, laid out a highway in said town, passing through the improved lands of the plaintiff. The damages sustained by the plaintiff by reason thereof were assessed by three commissioners appointed by the county judge of said county. From such assessment the plaintiff appealed, claiming the right to have such damages reassessed by a jury, pursuant to the act of 1847. (*Session Laws, vol. 2, p. 581.*) And according to the provisions of said act, he had a jury, who reassessed said damages, and awarded more damages to the plaintiff than were awarded by commissioners. The defendant was the supervisor of said town, and at the proper annual meeting of the board of supervisors of said county, laid before the board the assessment of the said commissioners, but did not place before the board the reassessment as made by said jury. The board thereupon audited and assessed upon the town the amount thus awarded by the commissioners, which amount the commissioners of highways of said town received, and thereupon, before this suit was brought, tendered to the plaintiff, which he refused to receive — claiming the amount as reassessed by the jury. The plaintiff thereupon brought this action against the defendant, claiming to recover of him the amount of the damages as thus reassessed by said jury. On the trial the judge directed a nonsuit, on the ground that the act of 1847 was unconstitutional.

The questions presented by the case were : 1. Whether the law of 1847 providing for such reassessment of damages is constitutional; and 2. Whether, if so, the plaintiff has an action against the defendant, acting as the supervisor of said town, arising from his conduct in presenting the assessment by the commissioners, and in not presenting the reassessment by the jury, for the action of the board thereon.

*Smith, Robertson & Fassett,* for the plaintiff. The provision of the constitution, article 1, section 7, with which the

act of 1847 is supposed to be in conflict, provides that "when private property shall be taken for any public use, the compensation to be made therefor, when such compensation is not made by the state, *shall be ascertained by a jury, or by not less than three commissioners, appointed by a court of record, as shall be prescribed by law.* The point is, that the use of the disjunctive "or," shows *the intent* of the framers of the constitution to have been to limit the legislative provision for assessing these damages, to the alternative of one or the other *only* of these methods. This construction is inadmissible, because I. It is based upon the radical and fatal error that the legislature *derived its power* to pass the law in question from this provision of the constitution, and being a *grant of power,* in the alternative, the legislature must adopt the one alternative or the other. Whereas, in fact, the constitution is the *limitation,* not the *grant* of the legislative power. In the one view, the constitution must be read thus : "The legislature is hereby given the power to enact laws for the assessment of these damages, either by commissioners or by a jury." In the other, thus : "The legislature has *unlimited power* to provide for assessment and reassessment of these damages, so AS IT BE by three commissioners or by a jury." "In theory of law, the British parliament is omnipotent." (*Story J. in Dartmouth College* v. *Woodward,* 4 *Wheat.* 518.) "The legislative power is absolute." (*Hallam's Const. Hist. vol.* 3, *p.* 193, *chap.* 15. 3 *Kent's Com.* 145. 19 *N. Y. Rep.* 450. 1 *Kent's Com.* 448. 1 *R. S.* 51, 5*th ed.* 3 *Barb.* 332. 18 *id.* 451. 2 *Kern.* 190.) And it was in view of this unlimited and dangerous legislative power, "that the framers of our government imposed upon our legislative bodies *in the shape of constitutions,* certain *restraints,*" "fixing *the limits* and marking the bounds of legislative power. (*Sedgwick on Construction,* 215.) For example : the *constitution* does *not give* the people the right of eminent domain, but it is in the people apart from the constitution. The peo-

---

Clark *v.* Miller.

---

ple, i. e. the legislature, by virtue of their sovereign power, might take private property for public use *without compensation*, but for the *prohibition* of this same section, (7 *of article* 1,) and they do *destroy* a man's property by *consequential* damages ; and his claim is met by the plea of "*damnum absque injuria.*" This section of the constitution is not the *grant* of the power to take private property. It is the *limitation* of that power. So this same section is not the *grant* of the power to assess the plaintiff's damages : it is the limitation of that power. "The constitution is a restriction and not a grant of power." (*Morrison* v. *Springer*, 3 *Amer. Law Reg.* 276.) "This theory must never be lost sight of by courts in examining the powers of the legislature. It is elementary, cardinal, and possesses frequently, controlling weight in determining the constitutional validity of their enactments. (*S. C. Wright, J.*)

II. But if the constitution were to be regarded as a grant of this power even — construing it by the familiar rules of construction — the *reassessment* was manifestly within the intent of the framers of the constitution. The *Revised Statutes*, (*vol.* 1, *p.* 515 § 64,) provided that the damages might be agreed upon by the commissioner of highways and the owner to the amount of $25. Any amount above that sum must be assessed by a jury, whose assessment was to be reported to the board of supervisors, who had power to increase or reduce it. The constitution of 1821 contained no restriction as to the method of assessment. The act of 1845, (*chap.* 180, § 5,) provided that damages should be assessed in the first instance by the commissioner of highways and two assessors of the town. From this assessment the supervisor of the town, or the owner, might appeal, as now, and *require a jury.* (*Same chap.* § 6.) The reassessment of the jury must be presented by the supervisor of the town to the board of supervisors, and if either party considers himself aggrieved, "the same shall, by order of the board, be referred to any three judges of the county for reas-

sessment," whose decision is final. (*Same chap.* § 8.) Then comes the constitution of 1846, art. 1, sec. 7, providing that the damages shall be ascertained by a jury, or by not less than three commissioners. Now, construing this provision of the constitution in the light of the *then existing law*, allowing first an assessment by the commissioner and two assessors, and thereafter two reassessments—in the first instance by a jury and then by the three judges—and the further important fact, that from the earliest history of the state, reassessments had been uniformly allowed in such cases, can it be pretended that the framers of the constitution meant by art. 1, sec. 7, to prohibit forever thereafter the *reassessments of damages ?* On the contrary, is it not manifest that they contemplated just the provision of the act of 1847, to wit, an appeal from the commissioners to a jury, or vice versa ?

III. But not only is the constitution to be read in the light of the then existing provisions of the law for reassessments, but the succeeding legislature, a few months thereafter, (the constitution was adopted in November, 1846,) in which were many members of the constitutional convention, enacted the law which is now assailed as unconstitutional ; and the ruling at circuit was erroneous, upon the well established authority of "Cotemporaneous and legislative exposition." "An act of the legislature following the adoption of the constitution, affords an *irresistible answer*, and has indeed fixed the construction. It is a cotemporary interpretation of the most forcible nature. This practical exposition is too strong and obstinate to be shaken or controlled." (*Stuart* v. *Laird,* 1 *Cranch,* 299. *Sedg. on Const.* 487. 2 *Wend.* 266, 274. 11 *id.* 511. 1 *Wheat.* 304. 6 *id.* 264, 418 *to* 421. 12 *id.* 290.)

IV. And "the uniform construction given to the constitution by the legislature, with the silent acquiescence of the people, including the legal profession and the judiciary, are proper elements of a legal judgment on the subject." (21

*Penn. R.* 188.   2 *id.* 277.   1 *Cranch*, 299.   26 *How. Pr. R.* 378.)   And "courts will interfere only in cases of clear and unquestioned violation of the fundamental law." (*Sedg. on Const.* 482.   6 *Cranch*, 87.   1 *Cowen*, 564.   3 *Denio*, 381. 3 *Selden*, 109.   19 *Barb.* 81.   5 *Sand.* 10.   3 *Serg. & R.* 63, 73.)   "An act of the legislature is not to be declared void upon a mere *conflict of interpretation* between the legislative and the judicial power."   (17 *N. Y. Rep.* 241.)

V. The question in controversy here is settled by direct authority. In Maryland, the constitution provides, (*art.* 3, *sec.* 47,) "The legislature shall enact no law authorizing private property to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a jury, being first paid or tendered to the party entitled to such compensation." Under this it was held that it is sufficient if provision be made for compensation, first to be paid or tendered to the owner, to be fixed by contract or by *assessment of commissioners*, giving the owner the right of appeal, and having a reassessment by a jury. And the neglect or refusal to appeal is held as a waiver of the right to a jury trial, and on *payment or tender of the compensation assessed, the property may be taken* for public use. (*Stewart* v. *The Mayor*, 7 *Maryland*, [5 *Miller*,] 501.) See this case discussed, *Sedg. on Const.* 527. If a law providing for two assessments, one by a method *not named in the constitution*, is valid, provided the party complaining may appeal, and have an assessment in the manner provided by the constitution, *a fortiori*, a law providing for two assessments, *both in manner as provided* by the constitution, must be constitutional. The same thing is held in other cases. "When a law creates a summary jurisdiction for the trial of causes without a jury, it does not violate the constitutional provision securing that right, *provided, on appeal*, the party is entitled to a jury of right." (*Morford* v. *Barnes*, 8 *Yerger*, 444. *Beers* v. *Beers*, 4 *Conn.* 535. *Merrick* v. *Harris*, 1 *Binney*, 416. *McDonald* v. *Schell*, 6 *Serg.*

*& R.* 240.) And see this question discussed, *Sedgwick on Const.* 549.

*E. P. Hart,* for the defendant. I. The act of 1847 providing for the reassessment of damages on the laying out of highways, is unconstitutional. The mode of ascertaining the damages in laying out of highways, before the constitution of 1846, was the following : They were first assessed by one commissioner ' and the assessors of the town. And such assessment, at the instance of any party aggrieved, could be reviewed by a jury. And if the supervisor of the town or any *person interested* felt aggrieved, the board of supervisors were required to refer the assessment to three judges for reconsideration. (§§ 5, 6, 7 *and* 8 *of Act* 1845, *chap.* 180. 1 *R. S.* 3d ed. 630.) This complex system of assessing damages it was intended by the new constitution to abolish, and substitute a simpler one. Whether the constitution by its own force abrogated the law as it stood before, as decided in 12 *Barb.* 446, or left it in force until legislation was had in conformity to the new constitution, as decided in 3 *Barb.* 332, is not material now to be considered, as the legislature has legislated on the subject. The provision of the constitution is as follows : "When private property shall be taken for public use, the compensation to be made therefor, when not made by the state, shall be *ascertained* by a jury, *or* by not less than three commissioners appointed by a court of record, as shall be prescribed by law. (*Art.* 1, § 7.) The legislature, by the act of 1847, chap. 445, amended the act of 1845, and substituted for the 5th section, a section that damages sustained in laying out a highway should be assessed by three commissioners, to be appointed by the county court. (*Act* 1847, 2d *vol.* 581.) They also provided for a reassessment by a jury, to be selected in the manner proposed. The assessment was had by the commissioner appointed under the act of 1847. And the question is whether the provision for reassessment is constitutional. 1. The

design of the constitution is that such damages shall be ascertained in one of two ways, leaving it to the legislature to say which. The provision is in the alternative. Either by commissioners *or* a jury, *as* the legislature shall prescribe. The legislature therefore had only to determine *which one* of these ways should be pursued. It had no power to say that *both* should be. But when it provided for one way, then by that way the damages *are ascertained, fixed and determined.* If no error in the proceedings, or in the principles of the assessment has occurred, such assessment is final. If such error has occurred, it can only be corrected by application to the courts. The provision for a jury is not in the nature of an appeal. It is but a *reassessment* at the instance of the party aggrieved. It could not be an appeal— which could be only to some organized judicial tribunal, under the constitution, authorized to correct the assessment for errors of law or of fact. That the legislature has acted without care, is indicated by the charter of the city of Rochester, passed in 1850, where damages for property taken for public uses of the city, were to be assessed by the *assessors,* and the act held void. (15 *Barb.* 517.) So in the charter of the city of Utica. (18 *id.* 451.) As was said in the latter case, (*page* 463,) " the constitution prescribes *one of two ways* by which compensation shall be made." (*Sec.* 4, *Const.* 437, 8. 2 *Kernan,* 200.) 2. The constitution was adopted with reference to the laws for obtaining compensation as they then were. And it was the design to do away with the then system, leaving it to the legislature to say which, in a particular case, of the two modes should be adopted. There may be reasons why a jury would be proper in one case, and why commissioners should be had in another. If not intended to restrict the legislature in the number of assessments, why in the same section limit, in case of private roads, the assessment to one, by jury ?

II. No action lies by the plaintiff against the defendant, as supervisor of the town.

Clark *v.* Miller.

*By the Court,* MASON, J.   The important question presented on this appeal is, whether that portion of the act of December 14, 1847, (*Laws of* 1847, *ch.* 455,) which provides for the reassessment before a jury of the damages on the laying out of highways, where they shall have been assessed in the first instance by the three commissioners appointed by the county court as required by the said act, is in conflict with the constitution of the state, and consequently void.

The 7th section of the first article of the constitution of the state declares that " when private property shall be taken for any public use, the compensation to be made therefor, when such compensation is not made by the state, shall be ascertained by a jury, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law." (*Const. art.* 1, § 7.)

The 5th section of the act provides that "whenever any damages are now allowed by law when any road or highway shall be laid out, altered or discontinued, in whole or in part, such damages shall be assessed by not less than three commissioners, to be appointed by the county court of the county in which such road or highway shall be," &c.   (*Laws of* 1847, *ch.* 581, § 5.)

The next section of the said act declares that any person considering himself aggrieved, or the commissioner or commissioners, on the part of the town, feeling dissatisfied by any such assessment, may, within twenty days after the filing of said assessment as aforesaid, signify the same by notice in writing and serving the same on the town clerk and the opposite party, that is, the persons for whom the assessments were made, or the commissioner or commissioners of highways, as the case may be, asking for a jury to reassess the damages and specifying a time not less than ten, nor more than twenty days from the time of filing said assessment, when such jury will be drawn at the clerk's office of an adjoining town of the same county, by the town clerk thereof, which notice shall be served upon said opposite party

within three days after service upon the town clerk as aforesaid," &c.   (*Laws of* 1847, *p.* 582, § 3.)

The three next sections provide for the manner of drawing and summoning the jury, and of the hearing on the reassessment, and require the jury to take a view of the premises and to hear the parties and such witnesses as may be offered by the parties, and shall render their verdict in writing, &c. I do not think that these provisions for the reasssessment of these damages by a jury are in conflict with this 7th section of the 1st article of the constitution.   I know that this section of the constitution declares that these damages shall be ascertained by a jury, or by not less than three commissioners, appointed by a court of record, as shall be prescribed by law.   The argument against the validity of these provisions is that the whole act, taken together, provides for the assessment of these damages, both before the commissioners named, and a jury also, and that the constitution seems to empower the legislature to provide for their assessment before one or the other; and it is contended that impliedly, therefore, it restricts the legislature from conferring this power of assessment upon both the commissioners and a jury.

The answer to this argument is, the legislature have provided for the assessment alone before the commissioners named in the act, and this is all; and to this extent they have kept strictly within the letter of the constitution. They have then set about providing for a mode of reassessment on the application of either party, who conceives himself aggrieved by the assessment.   This, I have no doubt, the legislature possessed ample power and authority to do. The theory of our state government is that the people have delegated to the legislature all the supreme power of legislation which resided in the body of the sovereign authority, the people, only restricted by the negatives which they have placed in the constitution upon the exercise of that power. The first section of article 3 of the constitution declares that the legislative power of this state shall be vested in a senate

Clark *v.* Miller.

and assembly. This carries all the supreme and sovereign power of legislation only, as we have said, as it is limited by prohibitions in the constitution itself.

This brings us to the real question in this case. Is this 7th section of the first article of the constitution a restriction upon the legislative power to provide for a reassessment of damages in such a case before a jury? I must say, it seems to me very clear that it is not. It is undoubtedly a restriction upon the legislative authority to provide for the assessment of damages in such cases in the first instance, as has been well held in several adjudged cases. (*House* v. *The City of Rochester,* 15 *Barb.* 517. *Clark* v. *The City of Utica,* 18 *id.* 451.) But I am not able to discover how it places any restriction upon the legislative authority to provide a mode of reassessing such damages on the application of an aggrieved party, where they have been once assessed, by a provision of the statute in strict compliance with the constitutional direction.

If this seventh section of the first article of the constitution is considered as merely prescribing the mode in which the legislative authority shall be executed in providing for the assessment of these damages in the first instance, and not as a sole grant of legislative authority over the whole subject, then there is no difficulty in upholding this statute providing for this mode of reviewing the assessment. That such is the true construction to be put upon this 7th section, it seems to me, is too plain for any argument.

The 1st section of the third article of the constitution confers the supreme sovereign power of legislation and is unlimited, only by the express restrictions placed upon it in the constitution; and as there is no restriction placed upon the power of the legislature to provide the mode of reviewing the assessment, the legislature could prescribe any mode or tribunal to review the same, which to them might seem proper; and the judicial tribunals of the state have no right

to interfere in the matter, but are bound to enforce the law as given to them by the sovereign legislative authority.

The 23d section of this act, (*Laws of* 1847, *p.* 588,) declares that all damages which shall be finally assessed or agreed upon by the commissioners of highways for the laying out of any road, except private roads, shall be laid before the board of supervisors by the supervisor of the town, to be audited with the charges of the commissioners, justices, surveyors and other persons and officers employed in making the assessment, and for whose services the town shall be liable, and the amount shall be levied and collected in the town in which the road is located, and the money so collected shall be paid to the commissioners of such town, who shall pay to the owner the sum assessed to him and appropriate the residue to satisfy the charges aforesaid. (*Laws of* 1847, *p.* 588, § 23.)

In the case at bar, the commissioners assessed the plaintiff's damages, and the jury, on the defendant's application for a reassessment, assessed them at $355, and their verdict was reduced to writing, signed and filed in the town clerk's office as required by the statute, and the defendant, who was supervisor of the town, was requested by the plaintiff to lay the same before the board of supervisors of the county, to the end that the same might be assessed upon the town. The defendant refused to do this, but took the original assessment and laid that before the board of supervisors, and this sum, $185, was assessed upon the town instead of the $355; and for this refusal of the defendant to perform his duty in this respect, this action was brought. If I am right, it follows that the nonsuit was wrong, and a new trial should be granted; costs to abide the event of the action.

[BROOME GENERAL TERM, July 12, 1864. *Campbell, Parker, Balcom* and *Mason,* Justices.]