# SUPREME COURT.

## Philip Menges agt. The City of Albany.

*Taking private property for public use — unconstitutional act of 1870 in reference to the city of Albany.*

According to the provisions of the constitution of this state (*art.* 1, § 7), when, private property is to be taken for public use — the opening of streets, etc. — *compensation* must be made by means of a jury, or by not less than three commissioners, appointed by a court of record, as shall be prescribed by law.

The act of 1870, chapter 77, which relates to the city of Albany, and certain provisions of section 1 of title 7 of said act (*Sess. L.*, 1870, *pp.* 159, 179), providing for proceedings to take the real estate belonging to any person for the purpose of laying out and opening any street, etc., requires the common council to nominate twelve discreet and reputable persons, freeholders, etc., and to apply to the supreme court, or any judge thereof, or the recorder of said city, for the appointment of three commissioners from the persons so nominated ; and said judge or recorder shall proceed to draw from a box, containing, on separate ballots, the names of the persons so nominated, the names of three persons, who, unless objected to or challenged, etc., shall be commissioners, for inquiring, assessing and apportioning the damages to the owners of the property required to be taken.

*Held,* that this enactment is in direct violation of the seventh section of the first article of the constitution aforesaid.

The appointment of the three commissioners which the constitution contemplates is to be made by the court of record, or a judge thereof exercising *judicial discretion ;* not by a ministerial act, in drawing three names selected by the common council from twelve ballots deposited in a box.

And where three commissioners have thus been drawn in pursuance of the act, and have performed duties as such commissioners under the act, they cannot be tortured into a *jury* for the purposes required by the constitution. A constitutional jury, in such case, requires more than

three men, even if they were regularly drawn and in other respects unobjectionable.

*Albany General Term, March,* 1873.

MILLER, *P. J.,* DANIELS *and* DANFORTH, *JJ.*

THIS case comes before the court upon a submission under section 372 of the Code.

The plaintiff is the owner of certain real property in the city of Albany. On the 17th day of April, 1871, the common council of the defendant passed resolutions for the opening, continuing and widening of First street, and nominating twelve men, named in the resolutions as "respectable and disinterested freeholders," as the persons from whom commissioners should be selected for inquiring into, assessing and apportioning the damages and recompense of the owners of the property to be taken.

The common council thereupon caused to be published a notice of application to the supreme court for the appointment of three commissioners, and on the 26th day of December, 1871, the day named in the notice, the court drew from a box, containing, on separate ballots, the names of the persons so nominated, the names of three persons, as commissioners, and made and entered an order reciting the proceedings and appointing as commissioners the three persons whose names were so drawn. The lands described in the resolutions and order included a portion of the real property of the plaintiff mentioned in the case.

The commissioners proceeded to assess the damages and recompense to which the owners were entitled, and also to apportion and assess such damages and recompense upon the owners of the property to be benefited by the public use of the ground. They awarded to the plaintiff $1,488.24. The total damages awarded, with the costs, charges and expenses, amounted to $39,163.07. Of this amount the sum of $3,389.06 was assessed upon the plaintiff, as owner of land

to be benefited. The inquisition and return, made and returned by the commissioners, was, on the 18th day of March, 1872, confirmed by order of the court at special term.

The plaintiff refuses to pay the assessment upon him. The defendant threatens to enter upon the plaintiff's lands and throw them open to the public as a highway or street, and also threatens to advertise for sale the lands assessed, and to collect and enforce the same. It is conceded that the proceedings threatened by the defendant, if illegal and void, would cause injury to him, cast a cloud upon his title, and involve him in a multiplicity of suits.

The defendant justifies its proceedings under chapter 77 of the Laws of 1870, title 7, section 1 (1 *S. L.*, 1870, *p.* 179).

The plaintiff claims that the law referred to is unconstitutional and void, and that the resolutions, orders and proceedings are illegal, and impose no legal burden or valid lien on the plaintiff, and do not justify the defendant in entering upon the lands of the plaintiff, and of appropriating and using the same as a public street.

*Matthew Hale*, for plaintiff.

*N. C. Moak*, for defendant.

MILLER, *P. J.*—The questions to be determined in this case affect the constitutional validity of chapter 77 of the Laws of 1870, which relates to the city of Albany, and of certain provisions of section 1 of title 7 of said act (*S. L. of* 1870, *pp.* 159, 179). The section referred to first provides for proceedings to take the real estate belonging to any person or persons for the purpose of laying out, opening, etc., * * * "any street," * * * "or for any other public purpose or use," and for the publication of notice specifying the ground required, and the time and place at which the damages and recompense to the owner or owners

Menges agt. City of Albany.

will be inquired into, assessed and apportioned, and assessed among the owners and occupants of real estate to be benefited by the intended public use of the ground, and, among other things, enacts as follows :

" And the said common council shall nominate twelve discreet and reputable persons, who shall be freeholders of the said city and in no wise interested in the questions of damages and recompense and the apportionment and assessments thereof, and make application to the supreme court, or any judge thereof, or the recorder of said city, for the appointment of three commissioners from the persons so nominated as aforesaid ; and thereupon the said court, or judge or recorder,. shall proceed to draw from a box, containing, on separate ballots, the names of the persons so nominated as aforesaid,. . the names *of three persons, who, unless objected to or* challenged on the ground of interest or qualifications, shall be commissioners for inquiring into and assessing and apportioning the damages or recompense of the owner or owners of the property required to be taken ; and in case any *challenge,.* which shall be taken as aforesaid, shall be deemed valid by. said court, or judge or recorder, or in case any person so drawn shall fail to qualify or refuse to serve, another name or names shall be drawn from the said box in place of the person or persons so *challenged* and set aside, or failing to qualify or. serve."

It is insisted by the plaintiff's counsel that this enactment is in direct violation of the seventh section of the first article of the constitution of the state, which provides that,. " when private property shall be taken for any public use, the. compensation to be made therefor, when such compensation is not made by the state, shall be ascertained by a jury, or by not less than .three commissioners appointed by a court of record, as shall be prescribed by law." According to the requirement of this provision of the constitution compensation must be made by means of a jury or by commissioners. Under the law in question the common council are to nomi-

nate twelve persons; and upon an application being made to the supreme court or a judge thereof, or the recorder of the city, for the appointment of three commissioners from the persons nominated, they are to be drawn from a box, and these or others, in case of challenge, selected in the same manner, are to constitute the commissioners.

It is plain, from a perusal of the statute, that the duty enjoined upon the court, judge or officer, in thus drawing the names of the persons selected, is ministerial, and does not require the exercise of any judgment or discretion in reference to the qualifications of the persons who are to be selected. The constitution provides for the appointment of commissioners, and it is difficult to see how the appointing power can be properly and lawfully exercised unless it is vested with complete authority in the selection of persons who are to be appointed. This is an essential and an indispensable element, and without it no appointment can be made. A drawing, by mere chance, from names which had been previously selected, in pursuance of other and different authority, would be entirely inconsistent with the design of an appointment. The former mode depends entirely upon chance alone, while the latter necessarily requires the employment of the faculties and the exercise of the judgment in making a choice as to the fitness and qualifications of the persons who are to be selected.

That the mode indicated by the law in question for the selection of commissioners is in violation of the constitution, has also been held in cases where the same provision has been presented for interpretation.

In *House* agt. *The City of Rochester* (15 *Barb.*, 517), the charter of the city authorized damages to be assessed by three assessors, assigned by the common council, and it was held to be in conflict with the constitution and unauthorized and void. In the case cited, the common council selected the assessors, while here they nominate the persons from whom they are drawn. The difference is exceedingly slight between

the case cited and the one at bar; and the fact that a judge or court is to draw the three commissioners from the names selected does not, in my opinion, obviate the difficulty or give validity to the law in question.

In *Clark* agt. *The City of Utica* (18 *Barb.*, 451), the charter provided that, when lands of individuals are taken for streets, the common council might appoint five disinterested freeholders to ascertain and report the recompense to be made, and it was held that the provision was in conflict with the constitution; that no appointment of commissioners by a court of record was provided for in the case, and that the persons designated did not constitute such a jury as the constitution contemplates. Both these cases are authority for the doctrine that commissioners must be appointed by the court, and cannot be chosen in any other manner.

The same principle is upheld in *Cruger* agt. *The H. R. R. R. Co.* (2 *Kern.*, 190); and JOHNSON, J., holds, at pages 197 and 198, that appraisers provided for in the act amending the charter of the Hudson River Railroad Company (*chap.* 31, *S. L. of* 1847) are not commissioners appointed by a court of record, within the meaning of the constitution, and that the language employed implies that the commissioners are to be selected by the court, in the exercise of their discretion and judgment, in regard to their fitness to perform the duties which will devolve upon them. He remarks: " Providing for a selection by lot and an appointment thereon, would amount to an evasion of the object of the constitutional provision." Having in view the object of the constitutional provision now considered, and looking at its plain import, it cannot, I think, be claimed, upon any rational hypothesis, that the persons chosen by lot in this case, and as provided in the section cited, were duly appointed commissioners, or had any authority to act as such, in accordance with the requirements or within the spirit and meaning of the constitution.

Upon the part of the defendant it is also claimed that the

legislature had power to provide that the compensation should be determined by a jury of less than twelve, or even less than six, and may constitutionally provide that the assessment by a majority of such jury of six shall be valid; and hence it is · argued that it is of no importance whether the persons drawn are called commissioners or jurors; and that the three commissioners named may be considered as a jury regularly selected within the constitutional provision cited. Under the constitution of 1822, which contained no provision as to the mode of ascertaining compensation, but simply provided that private property should not be taken for public use without just compensation (*art.* 7, § 7), it was decided that it might fairly be presumed that the framers of that instrument intended to leave that subject to be regulated by law, as it had been before that time, or in such manner as the legislature might deem best (*Beekman* agt. *S. and S. R. R. Co.*, 3 *Pa.*, 45, 75 ; *Livingston* agt. *The Mayor of New York*, 8 *Wend.*, 102).

The constitution of 1846 entirely changed the matter and restricted the legislature, so that either commissioners should be appointed or a jury selected. Where provision is made for commissioners, it is not manifest upon what principle they can be transposed into a jury. It is not enough to say that it makes no difference by what name they are denominated, so long as they are designated as commissioners, with some of the surroundings of a jury, and are appointed as such commissioners. I am at a loss to see how they can be considered, in any sense, as constituting a jury. Some remarks were made in *Cruger* agt. *H. R. R. R. Co.* (2 *Kern.*, 190) to the effect that a common-law jury of twelve men was not required for a jury of appraisal, and that the term "a jury" did not necessarily embrace twelve men ; and numerous acts of the legislature are cited to show that even six may be drawn for the purpose of appraising damages in certain cases, a majority of whom may make the certificate, and who are called indifferently throughout the

various acts jurors and appraisers and a jury of appraisers. In all the cases to which the learned judge referred, not less than six persons were named, and in no case has it ever been held that the term "jury" was applicable to three persons, especially when those persons are designated as "commissioners." The observations made were not necessary to the decision of the case last cited, and it was decided upon another and a different ground; but, under the circumstances, they cannot be regarded as having any bearing whatever upon the case now considered, as the law in question bears no analogy to the acts which are cited. It would be an anomaly in legislation to authorize three persons to constitute a jury, and to vest the power to act in a majority, two of these; and it is, in my opinion, a complete and conclusive answer to the position taken, that the law makes no *provision whatever for a jury* in this case, but expressly enacts that application may be made for the *appointment of commissioners*. It authorizes the common council to select the persons from whom the commissioners shall be drawn — a most extraordinary proceeding for the selection of a jury — and, so far as we are furnished with authority, without any precedent. It furnishes no opportunity to the parties interested in the real estate affected to participate in the selection of the persons originally nominated, thus leaving their choice entirely in the hands of the members of the common council. It is true that objection. may be made or a challenge interposed when the three commissioners are drawn, but this might be of little avail when the officers of one of the parties had, in the first instance, nominated the entire body from which the drawing was to be made.

The whole proceeding bears upon its face infallible indications that commissioners were to be appointed and no jury selected. The resolution of the common council nominates twelve persons "from whom commissioners shall be selected," and directed the corporation counsel to make application "for the appointment of three commissioners;" and the judge

Menges agt. City of Albany.

ordered that the persons named "be and they hereby are constituted and appointed commissioners." They acted and made an inquisition and return as "commissioners," and the order confirming their action designates them as "commissioners drawn and appointed." It is thus established by the act itself, by the assent of the parties and by all the proceedings, that commissioners were appointed and that no jury was ever chosen or intended to be selected. The provision in the law, that the commissioners are to "make and return" * * "an inquisition in writing of the amount of damages and recompense which they shall assess," etc., and the subsequent use of the word "inquisition," cannot be considered as contradicting the plain import of the act and the phraseology employed. This word is frequently used in connection with other matters besides the finding of a jury, and is appropriate when applied to commissioners appointed to inquire and make an assessment of damages incurred in proceedings of this character.

As no commissioners were appointed, and no jury selected as required by the constitutional provision in question, it follows that the proceedings were unauthorized and void. It is, therefore, unnecessary to discuss the question raised whether the act was passed in violation of section 16 of article 3 of the constitution.

The conclusion is inevitable that the plaintiff is entitled to a judgment upon the question submitted for determination, with costs.

DANIELS and DANFORTH, JJ., concurring.

Affirmed in the court of appeals.