By the Court, Talcott, J.
The plaintiff complains that the defendant entered upon his land, described ih the complaint, in July, 1870, and used and occupied the same until November, 1871, and while so in the occupation thereof cut and used, in the construction of its road, a large quantity of timber standing and growing upon the land ; and the plaintiff claims to recover as damages the value of such timber and the use of the premises. Evidence was given on the part of the plaintiff tending to establish his case.
The defendant, by way of defence, proved the commencement of proceedings in its behalf, for the purpose of acquiring title to the premises in question, under the general railroad act, by appraisal; that the land had been appraised, and the compensation awarded by the commissioners had been paid to and accepted by the plaintiff. These proceedings were not instituted till July, 1871, about a year after the entry by the defendant and the doing of the acts complained of by the plaintiff, and the compensation awarded was not paid till sometime after the commencement of the action. The judge, at nisi prius, ruled that the proceedings and payment constituted a bar to the action, and ordered *578 that the plaintiff be nonsuited. The plaintiff now moves for a new trial on the exception taken to such ruling. We think the ruling excepted to was erroneous. For what purpose the company entered on the land, and whether after the filing of a map locating their road across the lands in question, does not appear, except as it seems to have been assumed on the trial that a map locating the defendant’s road, and embracing the lands in question had been duly filed, and that the defendant entered upon the land and did the acts complained of, in the process of constructing its' road. The general railroad act, (Laws of 1850, ch. 140, § 28,) authorizes the entry upon private property for the purposes of a preliminary survey and examination, but subject, however, to responsibility for all damages occasioned thereby. The 21st section applies to cases where there has been an attempt to acquire title under the provisions of the act, but for some reason the title thus acquired proves to be defective ; in such case the statute undertakes to authorize an entry, or the retaining of possession, if an entry has already been made. But in such case actions against the company, for the acts done under the defective title, can only be, stayed by the payment into court of, or giving approved security for, a sum sufficient to meet the claim for compensation. With these exceptions we find and have been referred to no provisions of the act which purport to authorize a railroad company to use private property against the consent of the owner, except by going through the process prescribed by the act, to obtain the, title thereto. It will scarcely be contended that the act vests any title or right of entry in the.railroad company, with the exceptions pointed out, before the payment of the compensation secured by the constitution; much less before any proceedings have been commenced tending to the payment or security of such compensation. The general railroad act was passed after the decision *579 by the court of errors of a case which attracted universal attention, and evidently in view of’ the questions which had been settled in that case, namely, the case of Blood-good v. The Mohawk &c. Railroad Co., (18 Wend. 9.)
In that case, all the opinions delivered concurred in the view that an ,act of the legislature which should authorize a corporation to enter upon and use the lands of a private person, against his consent, (beyond a mere entry for survey and examination,) before having paid the compensation secured by the constitution, would be unconstitutional and void. The chancellor said, in that case: “If the true construction of this charter was such as is contended for by the defendant’s counsel, I should hold that the provision which authorized the appropriation of the plaintiff’s property to the use of the corporation, before the damages had been ascertained and paid, was unconstitutional and void.” The other opinions in the case are equally emphatic, on this point. It is clear, therefore, that the defendant had no right whatever to enter upon and use and occupy the land in . question for the purpose of constructing its road, or to take and appropriate the timber thereon against the consent of the plaintiff, before having ascertained the compensation to which the plaintiff was entitled under the constitution, and the payment thereof; and no provision of the act in question can be construed as purporting to give such right. It is also clear, that for such unauthorized entry, occupation and cutting down and conversion of the timber, a right of action accrued .to the plaintiff.
Was this right of action discharged, or defeated, by the proceedings commenced a year after it had accrued, to have the land appraised with a view to the subsequent acquisition of the title? We find no authority for this idea in the statute, and know of no principle upon which it can be maintained. The act furnishes no foundation for the claim that the commissioners of ap *580 praisal can, as such, take into consideration, and award damages for trespasses previously committed by the railroad company upon the property of the owner of the land they desire to appropriate, or causes of action previously existing in his behalf. The commissioners are to be applied for, as the act declares, to appraise the compensation to be made to the owner for the real estate “proposed to be taken for the purposes of the company.”
The only taking for the purposes of the company which is or can be authorized by the statute is, as we have seen, that which is to succeed the paying or securing of the compensation; not an unauthorized taking which has preceded the performance of this condition. To say that the corporation may first take and use the land and afterwards have the compensation ascertained and paid, is to hold that the statute does precisely that which, in the case referred to, it is held the legislature has no power to do. It probably could not be held to be an exercise of the right of eminent domain to undertake to authorize an appraisal of the damages a party „ may be entitled to recover against a railroad corporation, and the payment of the amount awarded in satisfaction thereof. It is difficult to see what public use or purpose could be subserved thereby. At all events, the act in question does not purport to do any such thing. It only attempts to condemn the real estate for the public use, upon payment of the compensation required by the constitution.
If a railroad company^ impelled by its interests or exigencies, sees fit to enter upon and take possession of, and use and appropriate, the lands and growing crops and timber, of a citizen, against Ms consent, and before having acquired the right to do so by the exercise of the delegated right of eminent domain, they do so under the same liabilities and responsibility for their acts *581 which would be incurred by any private individual who should do the same acts.
[Fourth Department, General Term, at Rochester,
April 1, 1873.
Mullin, Talcott and E. D. Smith, Justices.]
The bill of exceptions contains several exceptions taken by the defendant, to the offers of the defendant to show that the entry and use was by license, and that the damages were submitted to the arbitrament of the commissioners, &c. We do not consider any of the questions which might have been raised by the defendant upon these exceptions. This is the plaintiff’s bill of exceptions, made for the purpose of setting aside the nonsuit. The defendant’s exceptions have no place in the bill, and should have been stricken out, on settlement.
Considering the nonsuit erroneous for the reasons above stated, a new trial is ordered; with costs to abide the event.