(47 App. Div. 349.)

In re LENT, Supervisor.

(Supreme Court, Appellate Division, Second Department.   January 9, 1900.)

1. DRAINAGE COMMISSIONERS—APPOINTMENT—AUTHORITY.
   Under Const. art. 1, § 7, requiring that commissioners to ascertain the value of private property taken for public use be appointed by a court of record, drainage commissioners appointed by a justice of the supreme court or a county judge have not power to construct drains on land of nonconsenting owners.

2. DRAINAGE—LOCAL ACT—CONSTITUTIONALITY.
   Since Const. art. 1, § 7, requires that commissioners to ascertain the value of private property taken for public use be appointed by a court of record, Laws 1871, c. 882, providing for drainage in the town of Eastchester, which does not require that the drainage commissioners be appointed by a court of record, is unconstitutional, as against nonconsenting landowners whose land is sought to be used for such purpose.

3. SAME—GENERAL LAW.
   Since Laws 1871, c. 882, providing for drainage in the town of Eastchester, is defective in not providing means for securing the condemnation of private property for the construction of such drains, the town supervisor was justified in making application for the appointment of drainage commissioners under the general drainage law (Laws 1869, c. 888).

4. SAME—APPEAL—COSTS.
   Laws 1869, c. 888, authorizing the court to award costs, not exceeding $15 and disbursements, on an appeal from a decision of drainage commissioners, is not unconstitutional, as imposing a condition which abridges the right of appeal.

5. SAME—TRESPASS BY COMMISSIONERS.
   That drainage commissioners entered on private property, and constructed drains thereon, is insufficient to show that they were trespassers, where the owners of the property saw the work in progress, and made no attempt to stop it.

6. SAME—MISTAKES OF COMMISSIONERS—CORRECTION.
   Under General Drainage Law (Laws 1869, c. 888) § 16, authorizing the county court to correct manifest errors in proceedings under the act, where drainage commissioners had constructed drains without acquiring permanent rights to have them remain where constructed, it was proper for the county court to remit the matter to the commissioners to acquire the lands or necessary easements to render the location of the drains permanent.

Appeal from Westchester county court.

Application by Herbert D. Lent, as supervisor of the town of Eastchester, for the appointment of drainage commissioners. From

an order confirming the report of the commissioners appointed on such application, Alfred De Witt and others appeal. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

Theodore De Witt (George G. De Witt, on the brief), for appellants Alfred De Witt and others.

Charles B. Eddy, for appellants Rockwell and Mueller.

Isaac N. Mills, for respondents.

HATCH, J. By chapter 43 of the Laws of 1871 the county of Westchester was exempted from the operation of the general drainage statute of 1869 (chapter 888). By chapter 282 of the Laws of 1879, chapter 43 of the Laws of 1871 was repealed. The effect of this last repeal operated to revive the act of 1869, and Westchester ounty became again subject to its provisions, except so far as localities were subject to local regulations by local laws. Van Denburgh v. Village of Greenbush, 66 N. Y. 1. This condition was not changed by chapter 388 of the Laws of 1880. The latter act simply exempted the town of Newcastle from the operation of the act of 1869, and did not assume to change the status of any other portion of Westchester county. It is somewhat curious to note that the law thus revived as to the town of Newcastle has been the subject of judicial condemnation as an infringement of the constitution. White v. White, 5 Barb. 474–483. The act of 1869 is, therefore, to be regarded as applicable to this county, and to the town of Eastchester, unless it be inapplicable for some other reason. It is claimed that it is so inoperative for the reason that the subject of drainage in the town of Eastchester is governed solely by the provisions of chapter 882, Laws 1871. This is a local act, made applicable to such town, and covers the subject-matter. It is claimed, however, that this act is inoperative for two reasons: First, that it is unconstitutional; and, second, that it is not exclusive. If the former of these claims is upheld, the latter need not be considered. The constitutionality of the local act is challenged upon two grounds: First, for the reason that the commissioners authorized to be appointed to award damages for the land or interest which it is claimed the act authorizes to be taken are not to be appointed by a court of record, as required by the constitution; second, that the act makes no provision for notice to be given by the commissioners of the assessments made by them for cost of construction. An examination of the act shows that it provides for two separate and distinct proceedings upon the part of the commissioners authorized to be appointed by the first section. This and the four following sections provide for the determination by the commissioners as to the necessity for the proposed drainage. The next four sections provide, if the determination to construct be made and approved, for the construction of the work, and the making by the commissioners of an assessment for the same. The remainder of the act relates to borrowing money, levying and collecting the assessment, etc. By the first section the county judge of the county.

or a justice of the supreme court residing in the Second judicial district, is authorized upon petition by any person or persons of the town to appoint three commissioners. These commissioners are to determine upon the necessity of the proposed drainage, and file notice in the office of the clerk of the county of such determination, and give notice by publication of such filing. No other notice is required of this act. An appeal is authorized to the commissioners and the judge by any person aggrieved. If it shall be determined by the commissioners, or by the judge upon appeal, that the public health requires the drainage, the commissioners shall make maps of the territory, and cause the same to be filed. By section 8 it is provided:

"The said commissioners shall, as soon as practicable, ascertain and determine the costs, expenses and land damages of such drainage, make a complete and detailed statement thereof, which statement shall be duly verified by said commissioners, or by a majority of them. They shall also determine whether any, and if any, how much of said sum shall be assessed to and paid by any village or the town in which such drained land is situated, and they shall apportion all of said sum (except so much thereof as they shall determine shall be paid by any village or the town) among the several owners or occupants of such lands included in said map, or adjacent thereto, as they shall deem to be benefited by the said drainage, in proportion to the amount of benefit which each shall receive therefrom. And the several amounts so adjudged shall constitute liens upon the respective tracts until paid or otherwise removed."

By section 9 it is provided:

"The commissioners shall file in the office of the clerk of the said county a copy of said statement, and of said determination, certified by them. Any person deeming himself aggrieved, may appeal from the decision of such commissioners to the officer to whom the application is presented for the correction of such assessment, provided he serve upon the chairman of the said commissioners, notice of such appeal, within ten days after the same shall have been filed as aforesaid; which notice shall state the time and place where such appeal will be heard, and wherever such statement should be corrected. The officer to whom such appeal shall be made shall thereupon proceed, and without delay hear and determine the same, and by order confirm or correct the same, as to him may seem proper and just."

The constitution provides (article 1, § 7) that, when private property is taken for a public use, compensation shall be made, and, when compensation is not made by the state, it shall be ascertained by a jury, or by not less than three commissioners, "appointed by a court of record, as shall be prescribed by law." If this act authorizes the entry upon lands for the purpose of the construction of the drain against the will of the owner, whether the right which is to be obtained is the fee of the land or an easement therein, it would constitute a taking within the meaning of the constitution, and could only be done upon making compensation to the owner, to be ascertained by a jury, or by not less than three commissioners appointed by a court of record. There is a clear distinction between a court and an individual holding a judicial office which invests him with authority to hold court. Neither a justice of the supreme court nor a county judge constitutes a court of record. It requires other formalities and officials acting with the individual invested with the judicial office to constitute a court of record. People ex rel.

Eckerson v. Board of Trustees of Village of Haverstraw, 151 N.
Y. 75, 45 N. E. 384. The appointment by these officers of the com-
missioners to ascertain compensation if land or an interest therein
is to be taken by the terms of the act is, therefore, in contravention
of the constitution. Nor can the act be saved in this respect by any
consideration that the term "county judge," as used in the statute,
embodies the county court; for by the terms of the act there is no
right given to make application to any court of record, either of ap-
peal or otherwise. It studiously excludes courts, and relegates all
parties desiring or compelled to make application to protect their
rights to the judicial officer. We are therefore brought to an ex-
amination of the act in question, to see if it contemplates the acquire-
ment of lands, or an interest therein, and, if it does not, can it be
upheld as an authority to construct the drain independent of au-
thority to force a right of way? It cannot be doubted but that the
legislature has power to authorize the construction of a drain where
no authority is granted, or assumed to be, to take lands by proceed-
ings in invitum; and where the right to lay the drain, if it be laid
at all, rests upon the consent of property owners, obtained either by
purchase or by voluntary consent, no defect would be found in the
grant of power authorizing such acquirement. If the legislature
has this power, then an act may be sustained where the right is so
given, even though the act sought to confer greater rights, which
cannot be legally upheld. This would bring the case within the
familiar rule that, where the provisions of an act are not so inter-
dependent upon its other parts but that the good can be separated
from the bad, it may be upheld by rejecting that which is bad and
sustaining that which is good. Duryee v. Mayor, etc., 96 N. Y. 477.
There is nothing in the act which, in terms, authorizes the exercise
of the power of eminent domain. It is true that it provides for com-
pensation for "land damages," and assumes that they will be in-
curred. Laws 1871, c. 882, §§ 8, 10. This phrase of the act is laid
hold of by the respondent to show that the act itself contemplates that
the right of way may be forced. We think that such construction
may be avoided, and full force be given to all of the provisions of
the act. It is, in usual course, to be assumed that, when a pro-
ceeding of this character is instituted, it is the product of a desire
upon the part of those persons whose lands will be affected by the
proposed drain; and it is quite within the bounds of reason to sup-
pose that, for the most part, the lands to be drained will receive
benefit therefrom, and that the persons benefited will consent to
the construction of the drain across their lands. If this be the
case, then there would be no necessity for the exercise of the power
of eminent domain, and, if this be so as to that condition, the act
could clearly operate within the constitutional requirement, whether
the commissioners were appointed by a court of record or otherwise.
So, too, if the persons interested could obtain consent, either by pur-
chase or otherwise, short of the exercise of the power of eminent
domain, they could be authorized so to do without infringing any
constitutional requirement. Indeed, many acts have been presum-
ably acquiesced in which were clearly unconstitutional, where the

work seems to have been prosecuted by agreement. Hartwell v. Armstrong, 19 Barb. 166–174. The term "land damages," as used in the act, is quite consistent with an expense created therefor by agreement. If, by agreement, the owners sold the right of way for the drain, the expense therefor would be land damages in its technical sense. Examining the terms of this act in this respect, we see no reason why compliance may not be had with its terms in a very broad sense without resort to compulsory proceedings to obtain a right of way for the drain. If the drain may not be laid without resort thereto, then the purpose which the act sought to accomplish fails, but the act itself stands as authority to lay the drain pursuant to its provisions. We see no reason, therefore, why the act in this respect may not stand, and compliance be had with its provisions, without regard to the authority which appoints the commissioners. None of the cases cited by the respondent conflicts with this view. They were all cases which arose in resistance of an assessment which had been laid to pay for the drain actually constructed. The court in each case held the assessment bad for the reason that the improvement was unlawful, constituted a trespass, and that no assessment would lie to pay therefor. People v. Haines, 49 N. Y. 587; In re Cheesebrough, 78 N. Y. 232; In re Rhinelander, 68 N. Y. 105; People v. Nearing, 27 N. Y. 306; Copcutt v. City of Yonkers, 59 Hun, 212, 13 N. Y. Supp. 452. The question presented by these cases is entirely different from the one now under consideration, which is, does the authority authorize a legal act? The cases presented the question of whether compulsory process could issue to pay the expense of an accomplished illegal act. Where the act would be illegal but for the consent of the property owner, work done and improvements made based upon such consent would be sufficient to support an assessment therefor, as the owner would be estopped from questioning the authority, and the improvement would rest upon a legal basis. In re McGown, 18 Hun, 434; City of St. Joseph v. Landis, 54 Mo. App. 315.

This brings us to a consideration of the second question: Is the Eastchester act unconstitutional for failure to provide notice of the assessment? The only requirement of the act (section 9) is that the commissioners, after determining the costs and expenses, shall state the same, and shall file in the office of the clerk of the county a certified copy of such statement. An appeal therefrom is authorized to be taken by any person aggrieved within 10 days after the statement is filed. If no appeal be taken, or after a final determination of the appeal, if one be taken, the commissioner shall levy the assessment, and proceed and collect the same. It is thus apparent that no notice of the assessment is required to be given to the property owners. As an appeal is authorized, provision is made for a hearing, and in this respect the constitutional requirement is satisfied. People ex rel. Eckerson v. Board of Trustees of Village of Haverstraw, supra. But the constitutional right is to have notice of the assessment, as well as the right to be heard. Stuart v. Palmer, 74 N. Y. 183. In all of the discussions that have been had of this subject this right has always been asserted as

fundamental. In re Common Council of City of Amsterdam, 126 N. Y. 158, 27 N. E. 272. In the present case the time in which to appeal is limited, and, as no notice of the filing is required, the person affected may be deprived of all opportunity to have the assessment reviewed. The failure, therefore, to give notice, may defeat the right to be heard. And it was this reason, among others, which led the courts to declare that the chance of notice or the favor of a hearing is not sufficient; both requirements are matters of absolute right, and must be provided. It is suggested that, if a proceeding were taken under this statute, a case might be presented where the parties in fact had notice, or waived the notice, or had estopped themselves from raising the question, or had taken an appeal and expressly waived it, and that by reason of these conditions the court would sustain an assessment the result of a proceeding under this statute. And from this supposition is presented the claimed anomaly of the courts now declaring the statute unconstitutional and void in a proceeding not had under it, and supporting a proceeding conducted according to its provisions. We may answer this contention by stating that it is competent for persons to waive a constitutional requirement intended for their benefit, and that it would be competent for a court under such circumstances to pronounce a judgment based upon what the parties in interest had stipulated either as a matter of fact or as created by operation of law. We suppose that if a person had notice of the assessment, and took his appeal, and waived the constitutional question, but insisted upon other matters, that the court would have power to overrule the objection, and direct judgment sustaining the proceeding. Such judgment would not proceed upon a construction of the statute; it would be based upon a valid agreement, competent for the person to make, that, as to him, the law should be accepted as valid, and so upheld. The doctrine of estoppel, questions as to the measure of damages, and many other rights which a party might once have insisted upon as legal rights, may be otherwise considered by the courts, either as a condition created by operation of law on account of a given fact, or by a stipulation of fact, and judgment may pass, although it might not so pass under the same law as to a party who stood clearly upon his legal right, and had legal right to insist upon it. It is clear, therefore, that an act might not be upheld when a proceeding under it could be. Embury v. Conner, 3 N. Y. 511.

We are, therefore, brought to the other question: Is the petitioner to be heard to raise the question of the unconstitutionality of this statute? Generally, the courts will not decide a constitutional question unless the very point becomes necessary to a determination of the rights of the parties. Assuming that the proceeding must have been taken under the local act, if it be a constitutional act the necessity for the determination of that question would seem to be directly involved. Generally, also, the courts will not listen to any objection that an act is unconstitutional, unless the person raising the question has some property or other right which is necessarily involved in the determination, and which will neces-

sarily be affected thereby. Cooley, Const. Lim. 196; People v. Brooklyn, F. & G. I. R. Co., 89 N. Y. 75. The general drainage act (chapter 888, Laws 1869) vests authority in a person to petition to drain his own lands, either for their advantage or for the advantage of the public health. To the extent that such drainage is necessary for the protection of the public health this statute has been upheld, and authority to exercise the right of eminent domain for such purpose has been sustained. In re Ryers, 72 N. Y. 1. By virtue of the provisions of the constitution of 1894 this authority has been greatly extended. In re Tuthill, 36 App. Div. 492, 55 N. Y. Supp. 657. If the proceeding cannot be successfully prosecuted under the local act, then a property owner would be affected in his property right, unless he could resort to the general law for its prosecution. In fact, if he could not proceed under the local act, and right be denied to proceed under the general law, then he would be denied all right. As the individual has a property right in the subject-matter, it would seem to follow that he has such interest in the question as will enable him to raise and have determined questions affecting the right of which he is possessed. The petitioner in the present case is the supervisor of the town, and by express provision of the statute he is authorized to make petition, and prosecute the proceeding for the benefit of the town. By averment of the petition it is made also to appear that, as such supervisor, he is the president of the board of health of the town; that complaint has been made to the board of health that the undrained lands are a menace to the public health; and that, upon examination by said board, it has determined that said lands are dangerous to the public health. It is therefore made to appear that the supervisor is not alone a public officer, but that his duties as such officer require that he care for the public health. The officer therefore stands in this matter as the representative of all of the inhabitants of the town, and has an interest above that possessed by the private citizen. As the law imposes the duty, so it will aid him to a proper discharge of it as the necessities of the case require. If a proceeding under a given authority would lead to no result, or to futile results, then it would not be a proper discharge of his obligation to pursue it. As we have seen that a proceeding under the local act would produce such result, we think he was not bound to pursue that authority, but, on the contrary, that he was bound to proceed under such authority as would produce the result sought to be obtained; and to accomplish such purpose he can raise any and every question by which the legal right to prosecute the proceeding may be made clear. This obligation invests him with a legal interest in the question of the validity of the law, and a legal right to challenge it as an authority, when interposed to defeat the proceeding which he has instituted. We therefore reach the conclusion that this proceeding was properly instituted under the general law. But it is objected that the general law is unconstitutional, and that no proceeding under it can be maintained. This act is peculiar in that it provides that the assessment which the commissioners are required to make and file shall become a lien upon the land and

draw interest from the time of filing. While the act has been several times amended, this provision has remained in substance as originally drafted. 1 Rev. St. (Birdeye's 2d Ed.) pp. 955, 956. By the express provisions of the statute the assessment is made an interest-bearing debt, and a lien upon the land, before any notice of it is given, and before there is an opportunity for a hearing. If there were no other provisions, the act, for this reason, would be clearly bad. By subsequent provision, however, a personal notice of the assessment is to be given to the person affected, when it can be, and by mail when personal notice cannot be secured. But, singularly enough, there has not been reserved in the commissioners any right to correct the assessment; nor is there provision for hearing the person or persons affected thereby by them, the provision in this respect being that any person aggrieved by the assessment may appeal therefrom to the court in which the proceedings were instituted. In this respect the law has been amended. Formerly the appeal lay to the county judge; now it lies to the county court. Burk v. Ayers, 19 Hun, 17. If a hearing had been provided before the commissioners, and there had been reserved to them the power to correct the assessment, all difficulty, so far as concerns this question, would have been removed. But, as the law stands, the respondent must defend his claim to the constitutionality of the statute upon the right given to appeal. If such right be untrammeled, and the court is vested with the power to review and correct any errors in the assessment, it will answer the constitutional requirement for a hearing. No complaint is made but that the assessment is to be laid by the commissioners as authorized by law, and, if such duty was in all respects properly performed, no just complaint for that act could be made. The appeal which is authorized, and the power conferred upon the court, are in the most general words, and are exceedingly meager in terms. All of the power conferred is contained in these words: "The court shall thereupon proceed, without further delay than such as is necessary to give proper notice to the parties interested, to hear and finally determine the appeal." What particular thing the court is to do, or how wide in range its power may be exercised, is not made apparent in language. It was competent for the legislature to have vested the power to do all things necessary to correct any mistake or redress any wrong. People ex rel. Parker v. Jefferson County Court, 55 N. Y. 604. One thing is clear in this connection, if little else is. The court is vested with jurisdiction to hear the appeal, and therefore vested with authority to consider, determine, and decide upon the subject-matter thereof. Such authority vests the court with power to deal with the general subject involved in the proceeding. Hunt v. Hunt, 72 N. Y. 217. What is, then, the subject involved? Clearly, the subject-matter of the appeal, and such subject-matter the appellate court is to determine. The statute giving the right of appeal reads, "And the party making the appeal shall * * * make a full statement of the grounds of his appeal, setting forth the points on which he feels aggrieved by the determination of said commissioners," and file the same. The law never requires a vain

thing to be done, and in requiring this statement to be made it evidently intended that it should partake of the nature of a complaint, and furnish the appellate tribunal with the issue which it was authorized to determine. In this respect there is no limitation imposed. The statement of the grievance may be made as broad as the facts warrant the claim. As the court is required to determine the questions thus presented, so it had power to grant any relief to which the person may show himself entitled, and in this respect can make correction of any act which the commissioners were required to perform in laying the assessment, if such act was specified as a grievance by the appellant, and the court found that the specification corresponded with the fact. The right to be heard, therefore, is as broad as the parties affected by the statute have the right to ask, and the constitutional guaranty upon this question is complied with.

This brings us to consider whether the right of appeal is trammeled by conditions which destroy the provision granting it. There is no condition precedent attached to the right to appeal. The right is unfettered and unqualified. But the court upon the determination of the appeal may award costs, not exceeding $15 and disbursements. Appellant insists that this is such a condition as operates to prevent a free and untrammeled right of appeal. He relies upon People ex rel. Eckerson v. Board of Trustees of Village of Haverstraw, 151 N. Y. 75, 45 N. E. 384. In that case the statute provided, as a condition of appealing, the execution by the appellant of a bond in the penalty of $250, with two sureties, conditioned for the payment of the fees of the commissioners and the costs of the appeal in case the award was not increased $20, and this was held to be such condition as hampered the right of appeal, and rendered the statute unconstitutional. In that case the requirement was thought to be one which would destroy the right to appeal, as the party affected might not be able to comply with it. But it is evident that the court did not intend to hold that every condition for which provision might be made would avoid all the provisions of the act. If an act should provide that the appellant should pay one dollar calendar fee if he be defeated, it would be a great stretch of judicial power to hold such act, otherwise good in all respects, void, as being unconstitutional because such condition was attached. We had supposed that all such conditions which hampered the right of appeal might be rejected as void, and the act otherwise be given effect. The court in the last case reached the conclusion that the requirement of the bond would or might deny the right of appeal. The condition was extremely onerous, and would doubtless prevent parties from the assumption of risk which would necessarily be incurred. In the present case, however, no such condition is imposed. There is a contingent liability only, so small in amount as not to be likely to deter any person from exercising the right on account of such contingency. Costs do not stand upon the same footing as the expenses for which the bond made provision. They are usually an incident to the judgment pronounced. King v. Poole, 36 Barb. 242. And while, in some cases, they form a part of the substantive

decision (In re Gall, 40 App. Div. 114, 57 N. Y. Supp. 835), yet they are usually a mere incident to a litigation. In the present case they rest in the discretion of the court to award. We think that the contingency does not form such a barrier to the right of appeal as requires us to hold the law unconstitutional for that reason. As we can reject this part of the act entirely, and still have all of the essentials of a good act left, retaining an entirely unfettered right of appeal, such conclusion should be reached, and effect be given to the act.

The length of the discussion upon the main questions forbids extended discussion of the points wherein it is claimed the proceedings are irregular. The objection that Lawrence and Mrs. Rockwell did not have notice of the proceeding ought not to be sustained. They each knew of the description of the land to be drained, and must have known that the drain would pass through their lands; and they thereafter saw the work progressing, and made no objection. Notice of the determination was mailed to Mrs. Rockwell and to the Lawrence Park Association, care of William Lawrence. Of this association Lawrence was president and principal stockholder, and, after its dissolution, title was taken to the land by Lawrence. This transfer was of recent date. Lawrence therefore had notice of the fact of what transpired, whether legal or otherwise. No appeal was taken from the determination. This defect is not mentioned, or in any manner stated, as a point of grievance, by the present appellants. It was specified in the statement of the New York Quarry Company, but it had not appealed from the determination of the county court. The object of requiring a statement of the grievances relied upon by the appellant is to apprise the petitioner and those interested of the points of attack, and the appellant should be held limited to such points as he states. This question, therefore, is not before this court. In re Underhill (Sup.) 6 N. Y. Supp. 716. The case does not establish that the commissioners, in entering upon the lands, and constructing the drains, were in fact trespassers. All that appears upon this subject is that the commissioners had not acquired a permanent right to have the drains remain where they were constructed. This did not, however, establish that they were trespassers. For aught that appears, the several owners consented to the construction. No one stopped the work, and all saw it in progress. If the commissioners were permitted to lay the drains by the owners, they were not trespassers; and at the most, until the owner directed the removal of the structure, no action would lie against them. Assuming, however, that the drains were laid without authority, and that a trespass was committed, still there was power in the county court to correct errors, and why not this one? When the matter was brought to the court's attention, it remitted the proceeding to the commissioners to acquire lands or easements necessary to render the location of the drain permanent. The commissioners were not yet functus officio; they only became so when dissolved by order of the court. 1 Rev. St. (Birdseye's 1st Ed.) p. 957, § 12. The power vested in the court is quite broad. It "may, at any time, correct any manifest error in any of the proceedings under

this act, when such correction shall be in furtherance of justice, and the said court may allow such amendments and make such orders and impose such terms as shall promote the objects of this act and be equitable to all the parties." Section 14. At the time when the order was made, the proceedings had not ended, the commissioners were in existence, and the regularity of their acts was the matter before the court. The drain was laid, and when it was laid no person objected. It was found that the permanency of the drain where it was laid was not secure, as the proper right to have it remain had not been made legally conclusive. Was everything to be lost by this omission? We think not. It became the duty of the court to see that the work thus far accomplished should be settled in absolute right, and it made the order remitting the matter to the commissioners to accomplish that end. The equitable rights of all parties required that this be done. The omission was a manifest error, and its correction is in the furtherance of justice. The court had the power to order, and the commissioners the right to proceed thereunder, and perfect title to the land, and levy a new assessment. Olmsted v. Dennis, 77 N. Y. 378; In re Swan, 35 Hun, 625; Id., 103 N. Y. 661. If there was in fact a trespass in laying the drain under the authority of the foregoing cases, the same might be corrected by a subsequent proceeding. The commissioners may be liable for the trespass, but the court preserves the power to correct the error. Blodgett v. Railroad Co., 64 Barb. 580. The evidence respecting the faulty and improper construction of the drain, and the use of imperfect and unfit material is conflicting. If one side is to be believed, the drain is a failure in every sense, and will shortly be a thing of the past. If we accept the statements of the other side, the drain is properly constructed, in the most durable manner, of the best materials, and not only had solid advantages, but is a work of art. It is evident that this court cannot interfere with what has been done upon this ground. It is clear that the commissioners made a mistake, whereby the cost of the work was very much enhanced. It may be that the commissioners are censurable for the mistake, but that fact cannot defeat the right of the contractors to be paid the fair cost of the work which they did in good faith, and were compelled to do by reason of such mistake. These commissioners were not subordinate to any other body in the prosecution of the work. They were vested with large discretionary powers in the construction, and, in the absence of fraud and collusion with the contractor, could modify, change, and alter the plan of the work. In re Underhill, supra. In Freel v. Queens Co., 9 App. Div. 186, 41 N. Y. Supp. 68, Id., 154 N. Y. 661, 49 N. E. 124, the commissioners were subject to the board of supervisors, who in fact made the contract. Being so subject, it was held that they had no power to modify the contract. This and similar cases have no application, for the reasons already stated. The proof showed that the allowance made to Fairchild was for services rendered as engineer. These services were independent of his duties as commissioner, and, in the absence of bad faith,—of which we find no evidence,—he was entitled to render them, and be compensated there-

238

for. Jackson v. Railroad Co., 2 Thomp. & C. 653, affirmed on opin-
ion below, 58 N. Y. 623. The allowances made by the commissioners
were properly the subject of scrutiny by the county court, and, the
court having passed upon and approved them as charged, we find
no ground for interference. We have examined all of the ques-
tions presented by this voluminous record, and find no substantial
error therein. The order should therefore be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.