The People of the State of New York ex rel. J. Esler Eckerson et al., Appellants, *v*. The Board of Trustees of the Village of Haverstraw, Respondent.

1. Eminent Domain — Constitutional Jury.   The word "jury," as used in the clause of the Constitution (Art. 1, § 7) prescribing the methods of ascertaining the compensation for private property taken for a public use, means a jury of men possessing such qualifications as the law in force at the time prescribes for jurors serving in the courts, and selected from one of the lists in use by the courts.

2. Village Street Opening — Jury of Appraisal — L. 1893, Ch. 694.   A jury to determine and award damages to private landowners by reason of the opening of a village street, selected by the village trustees from a list prepared by them under the provisions of the act for the incorporation of villages, as amended by chapter 694, Laws of 1893, and composed of persons possessing only the qualifications prescribed by that act, is not such a jury as is required by the Constitution.

3. Commissioners of Appraisal — Appointment.   Persons selected by the trustees of a village to determine the damages to be awarded to private landowners by reason of the opening of a village street, under chapter 694, Laws of 1893, even if assumed to be commissioners, and not a jury, do not satisfy the requirements of the Constitution (Art. 1, § 7), not being selected by a court of record.

4. Appointment of Commissioners by County Judge.   *Quære*, whether the right conferred by the act for the incorporation of villages as amended by chapter 59, Laws of 1878, to obtain an appraisal of damages for the opening of a village street, by commissioners appointed by the county judge, satisfies the requirement of the Constitution (Art. 1, § 7) for the ascertainment of compensation by commissioners "appointed by a court of record."

5. Ascertainment of Compensation by Appeal.   When the primary method provided by the legislature for awarding compensation for private property taken for a public use is unconstitutional, the constitutional requirement is not satisfied by the giving of a right of appeal whereby the compensation may be ascertained in a manner prescribed by the Con-

76          People ex rel. Eckerson *v.* Trustees.          [Dec.,

Statement of case.          [Vol. 151.

stitution, unless the right of appeal is so unhampered as to be freely enjoyed without regard to the ability of the property owner to give bail or pay costs.

6. Ascertainment of Compensation by Conditional Appeal— L. 1878, Ch. 59. The right to appeal to the county judge from the award of a jury of damages for a village street opening, and to obtain thereby a new assessment of damages by commissioners, allowed by the act for the incorporation of villages, as amended by chapter 59, Laws of 1878, upon condition of giving a bond in the penalty of two hundred and fifty dollars, with sureties, conditioned for the payment of the fees of the commissioners and the costs of appeal, provided the award of the jury is not increased twenty dollars to each party appealing, is not a constitutional method of assessing the damages of a landowner.

*People ex rel. Eckerson* v. *Board of Trustees,* 80 Hun, 385, reversed.

(Argued October 9, 1896; decided December 1, 1896.)

Appeal from a judgment of the General Term of the Supreme Court in the second judicial department, entered September 10, 1894, confirming on certiorari an award made by a jury in proceedings to condemn land for the purpose of opening a street.

The facts, so far as material, are stated in the opinion.

*Louis Marshall* for appellants. Certiorari is the proper remedy for the review of the proceedings that have been taken by the respondent for the acquisition of the relators' premises. (*People ex rel.* v. *Village of Haverstraw,* 137 N. Y. 88.) The provisions of the act of 1893, with respect to the selection of a jury for the assessment of the damages sustained by the owners of the property whose lands are taken for street purposes, are unconstitutional. (Const. of N. Y. art. 1, § 7; *House* v. *City of Rochester,* 15 Barb. 517; *Menges* v. *City of Albany,* 56 N. Y. 374; *Hilton* v. *Bender,* 69 N. Y. 75; *Carpenter* v. *State,* 4 How. [Miss.] 163; *Boyd* v. *State,* 1 How. [Miss.] 177; *Lamb* v. *Lane,* 4 Ohio St. 167; *Cruger* v. *H. R. R. R. Co.,* 12 N. Y. 198; *People* v. *Green,* 2 Wend. 274; *People ex rel.* v. *Brundage,* 78 N. Y. 403; *People ex rel.* v. *Carr,* 100 N. Y. 243.) The jury was illegally constituted, in that two of its members were over the age of seventy years, and were objected to on that ground. (Code

Civ. Proc. §§ 1027, 1035–1037, 2990, 2991, 2995.) The act is also invalid, because it did not require the jurors to take, and they did not, in fact, take the oath prescribed by article 12 of the Constitution. (*Lumsden* v. *Milwaukee*, 8 Wis. 239; *Merritt* v. *Village of Portchester*, 71 N. Y. 309.) The act of 1878, which relates to the appointment of commissioners in the event of an appeal from the award of the jury, is likewise unconstitutional. (4 Am. & Eng. Ency. of Law, 452; *Striker* v. *Kelly*, 7 Hill, 9; *People ex rel.* v. *Donovan*, 135 N. Y. 79; *In re Roberts*, 70 N. Y. 5; Code Civ. Proc. §§ 872, 873; *Heishon* v. *K. L. Ins. Co.*, 77 N. Y. 278; *People ex rel.* v. *Rice*, 57 Hun, 62; *Hall* v. *U. S. R. Co.*, 31 Hun, 609; Laws of 1883, chap. 387, § 1; *U. S. T. Co.* v. *N. Y., W. S. & B. R. R. Co.*, 67 How. 390; *Northrup* v. *People*, 37 N. Y. 203; *Pettit* v. *Pettit*, 20 N. Y. Wkly. Dig. 154; *Crosby* v. *Thedford*, 7 Civ. Proc. Rep. 245.)

*Alonzo Wheeler* and *William McCauley, Jr.*, for respondent. Certiorari is not the proper remedy. (Code Civ. Proc. § 2122, subd. 2; Laws of 1878, chap. 59, § 4; *People ex rel.* v. *Supervisors of Queens*, 1 Hill, 195; *People ex rel.* v. *Covert*, 1 Hill, 674; *People ex rel.* v. *Morgan*, 65 Barb. 473; *People ex rel.* v. *Overseers of Berne*, 44 Barb. 467; *People ex rel.* v. *Board of Health of N. Y.*, 33 Barb. 344.) The jurors Allison and Smith were not disqualified from acting as such by reason of their being over seventy years of age. (L. 1893, ch. 694; *Buckley* v. *Drake*, 41 Hun, 384.) The statute under which this proceeding was instituted is constitutional. (Bishop on Written Laws, § 90; *Buckley* v. *Drake*, 41 Hun, 384.) If it shall be held that the jury by which the award was made was not a constitutional jury, it does not follow that the proceedings and the award were, therefore, void. (*Lamb* v. *Lane*, 4 Ohio St. 167; *Jones* v. *Robbins*, 74 Mass. 329; *City of Des Moines* v. *Layman*, 21 Iowa, 158; Tiedeman on Mun. Corp. 245.) The act under which the award is made is not unconstitutional, in that it directs the appeal from the award of the jury to be made to the county judge instead of in terms to the County Court. (*People* v. *Rosenberg*, 138

N. Y. 410; *People* v. *Gillson*, 109 N. Y. 397; *People* v. *Webster*, 28 N. Y. Supp. 647; *Ogden* v. *Saunders*, 12 Wheat. 270; *Sweet* v. *City of Syracuse*, 129 N. Y. 350; *Holmes* v. *Carley*, 31 N. Y. 289; *People* v. *U. Ins. Co.*, 15 Johns. 379; *H. I. Co.* v. *Alger*, 54 N. Y. 173; *Hennessey* v. *Volkening*, 22 N. Y. Supp. 532; *Clarke* v. *City of Rochester*, 24 Barb. 471; *People ex rel.* v. *Suprs. of Orange Co.*, 17 N. Y. 241.) The claim that any of the rights of the landowner are violated by the requirement that upon an appeal from the award of the jury he shall give a bond, and that if the award shall not be increased twenty dollars he shall pay the costs of the appeal, cannot be sustained. (*In re R. & S. R. R. Co.* v. *Davis*, 55 N. Y. 145.) The question of the adequacy of the compensation awarded by the jury for the land taken in this case cannot be considered by this court. That question cannot be reviewed by certiorari, for with respect to it the owners, if aggrieved, have an adequate remedy by appeal. (Code Civ. Proc. § 2122, subd. 2.)

VANN, J. In March, 1893, the respondent determined to open a new street in the village of Haverstraw, and for that purpose to acquire the title to certain lands belonging to the appellants. A jury was selected, trial had and an award made, but as it was not satisfactory to the landowners, they procured a writ of certiorari to review the proceedings, claiming that they were in violation of the Constitution of the state. The General Term affirmed the award, one of the learned justices dissenting, and the relators bring this appeal. The proceedings were founded on the act of 1870 for the incorporation of villages, as amended in 1878 and 1893. (L. 1870, ch. 291, title 7, p. 694; L. 1878, ch. 59, p. 66; L. 1893, ch. 694, p. 1732.) That act makes the board of trustees commissioners of highways and authorizes them to appropriate any land in the village for the purpose of opening streets, but requires that the damages caused thereby, if not agreed upon, shall be determined and awarded by a jury of six freeholders, to be selected as follows: "The said board of trustees shall

1896.]    People ex rel. Eckerson v. Trustees.    79

N. Y. Rep.]        Opinion of the Court, per Vann, J.

prepare a list of the names of twelve freeholders of the village, in no wise of kin to the applicants, owners or occupants, or any or either of them, and not interested in the lands proposed to be taken; the said board shall cause a copy of such list, with a notice that a meeting will be held at some convenient time and place within the village, for the purpose of selecting the jury from such list, to be served on each of said owners. * * * At the time and place mentioned in said notice, the board of trustees shall meet, and the owners of the land may strike· from the said list not more than six names, and of the number which remain the six names standing first upon the list shall be the jury." (L. 1893, ch. 694, § 1.)  Within twenty days after an award by the jury as thus constituted, any person interested may appeal therefrom to the county judge of the county where the village is situated, by a petition "praying for the appointment of three commissioners, residing in said county, to review said award of said jury."  The statute further requires that "the person appealing shall execute a bond to the village in its corporate name in the penal sum of two hundred and fifty dollars, with two sureties who shall justify in twice the amount, conditioned for the payment of the fees of said commissioners and costs of appeal, in case the award of the jury shall not be increased twenty dollars by said commissioners to each party appealing."  Provision is made for service of a "copy of the petition with a notice of the time when and the place where it will be presented to the said judge," who "on hearing the parties" may "appoint three disinterested electors to review the award of said jury and determine and award the damages of the person or persons appealing."  The commissioners so appointed "have power to compel attendance of witnesses by subpœna," and, after examining the premises and hearing the proofs and allegations of the parties, to award such damages to the appellants as they shall deem just.  The award thus made is declared by the statute to be "final and conclusive on all persons interested." (L. 1878, ch. 59, § 8.)

The proceedings in the matter now before us were substantially in accordance with the statute. When the trustees met to choose a jury from the list of twelve names previously selected by them, the relators objected upon the ground "that the proceeding  *  *  *  to assess the damages  *  *  * by a jury, named or designated in whole or in part by this board is illegal, unconstitutional and unjust." The trustees declined to make any ruling upon the question thus presented, and thereupon the counsel for the relators struck one name from the list and declined to strike off any other, although he insisted that two of the persons left were disqualified to act, because they were both over seventy years of age and he presented the affidavits of those jurors to that effect in aid of the objection. Without any specific ruling this objection was also disregarded, whereupon the first six persons whose names then appeared on said list, including the two who had been objected to on account of their age, were selected by the trustees to determine and award the damages sustained by the relators. After a long trial the jury awarded the sum of $1,100, whereas the amount claimed was over $70,000.

It is provided by our present Constitution that "when private property shall be taken for any public use, the compensation to be made therefor, when such compensation is not made by the state, shall be ascertained by a jury, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law." (Art. 1, § 7.) The Constitution of 1846, which was in force when the award in question was made, contained the same provision in the same words. Prior to that the Constitution simply directed that private property should not be taken for public use without just compensation, but said nothing as to the manner in which such compensation should be ascertained, and thereby left the subject, as was held by the Court of Errors, "to the discretion of the legislature, to be regulated in such manner as might be prescribed by law." (*Livingston* v. *Mayor of New York*, 8 Wend. 85, 102.)

Two questions are presented for discussion by this appeal:

1. Whether a jury thus selected under the statute in question meets the requirements of the Constitution; and, if it does not, 2. Whether the right of appeal, provided by the statute, is a constitutional method of assessing the damages. As to the first question, we agree with the learned General Term that the word "jury," as thus used in the Constitution, means a body of jurymen drawn in the ordinary mode of drawing jurors for service in the courts. This was so held by the Court of Appeals in *Cruger* v. *Hudson River Railroad Co.* (12 N. Y. 190, 198), upon the ground that when the Constitution of 1846 was adopted there was a known legislative usage upon the subject, which had existed during a period of more than twenty years immediately preceding the sitting of the convention, and that the term "jury" was hence presumed to have the same meaning in the Constitution, with reference to the appraisement of damages in condemnation proceedings, that it had acquired from long use by the legislature with reference to the same subject. Many statutes were cited by the court in support of its position, and we have examined many passed since that time without finding one, other than that under consideration, which authorized a jury to be drawn to assess such damages, except from the list of jurors, grand or petit, made up for use in the courts. When the legislature has frequently acted with reference to a subject, and always in such a way as to give a certain effect or meaning to a particular word, it has an important bearing upon the meaning of that word in a constitutional provision upon the same subject, adopted at about the same time. Under such circumstances, and in the absence of anything to indicate a different intention, it is a reasonable presumption that the framers of the Constitution adopted the word with the meaning that it. had acquired from legislative usage. This presumption is strengthened if, after the adoption of the Constitution, the legislature continues to use the word, during session after session, almost without exception, with the same meaning under similar circumstances.

No argument is needed to show that the jury in question was not drawn in the ordinary mode of drawing jurors. The jury list, when prepared according to law for use in the courts, comprises a collection of men selected from the body of the people, possessing certain qualifications, and supposed to represent the average intelligence, judgment and integrity of the best class of citizens. They are required to be male citizens of the United States, residents of the county, not less than twenty-one, nor more than seventy years of age, taxpayers in their own names or through their wives, in the possession of their natural faculties, neither infirm nor decrepit, free from all legal exceptions, of fair character, approved integrity, sound judgment and well informed. (Code Civ. Pro. §§ 1027, 2991; 2 R. S. 411, § 13, 720, § 3; L. 1890, ch. 156.) From this list the jurors are drawn publicly by lot, in the most careful manner and under the supervision of not less than two public officers, when they are to serve in courts of record, and by the court itself when they are to serve in the minor courts. Every reasonable precaution is taken to select fair and impartial men, and no party to an action can, directly or indirectly, choose the jurors who are to serve at the session of court when such action is to be tried.

According to the act under consideration, the jurors are simply required to be freeholders of the village, not related " to the applicants, owners or occupants," nor interested in the lands proposed to be taken. No other qualification is required and no further limitation imposed. As was said by the learned General Term, the jurors " may be of any age, or of either sex, and possessed of none of the qualifications named in the Code." They might be ignorant or dissolute; without character or judgment; unable to comprehend evidence, or understand law and in all respects unfit to act as judges in a matter even of small importance. A jury composed of such persons, which though not probable, is possible under the act in question, would not be such a jury as is meant by the Constitution. The objection to the method of selection is equally serious. The respondents were in a certain sense parties to the pro-

ceeding to condemn this land. They represented the village and its interests. While they could not act except upon the petition of ten freeholders, when they did act, their interests at once became adverse to those of the landowner, for it was their duty to get the land as cheap as they could. The petitioning freeholders, upon presenting their petition, at once dropped out of sight. They had no further power. They are not parties to the proceeding. They do not defend this appeal, nor have they fought the matter for the village and against the relators thus far through the courts. The trustees represent, as they should, the interests of the public. They, and they alone, have the power to discontinue or proceed. They are authorized to agree upon the price of the land. They may purchase it if they can; if not, they make take it against the will of the owner through the power of eminent domain. Yet the statute gave them the right to select the men who were to decide the very question, which they, as representatives of the village, had been unable to agree upon through negotiation with the owners. It is true that the landowner could strike off six from the list of twelve, but if they were all alike, what good would that do? While we have no reason to believe that the trustees in this case abused their power by selecting unworthy men, they could have done so and yet have kept within the statute. They could have selected, as they did in part, those disqualified by age. They could have gone farther and have chosen those who were manifestly unfit, through ignorance, prejudice or want of moral character, to sit in judgment upon the rights of others. That they did not do so is to their credit and not to the credit of the statute. We think that the Constitution means a jury of men with such qualifications as the law in force at the time prescribes for jurors serving in the courts and selected from one of the lists in use by the courts.

The argument that the six persons referred to in the statute are not really a jury, but commissioners, as was held in another state, under somewhat similar circumstances (*Soens* v. *Racine*, 10 Wis. 271), does not aid the respondents, because, assuming

84      People ex rel. Eckerson *v.* Trustees.      [Dec.,

Opinion of the Court, per Vann, J.      [Vol. 151.

that those called a jury by the statute were in fact commissioners, they were not selected by a court of record, as required by the Constitution, but by the respondents themselves. (*House* v. *City of Rochester*, 15 Barb. 517; *Menges* v. *City of Albany*, 56 N. Y. 374; *Hilton* v. *Bender*, 69 N. Y. 75, 86.) It is, however, insisted, and so the General Term held, without having the advantage of hearing the point discussed, that the appeal to the county judge allowed to the landowner by the statute, and the appointment by that officer of three commissioners to proceed *de novo* with the appraisal, would be a sufficient compliance with the Constitution.

The statute requires the county judge of the county to appoint the commissioners, while the Constitution commands that they shall be appointed by a court of record. A county judge is not a court of record. A court is a tribunal organized according to law and sitting at fixed times and places for the administration of justice, not an individual holding a judicial office. The distinction between a court of record and a judge of a court of record is too well recognized in the law to require discussion. (*People ex rel. Lower* v. *Donovan*, 135 N. Y. 76, 79; *Heishon* v. *Knickerbocker L. Ins. Co.*, 77 N. Y. 278; *Matter of Roberts*, 70 N. Y. 5.) The distinction is recognized by the learned counsel for the respondents, who contends that the validity of the statute should be determined by the effect of the action taken under it, and as the landowner may always make his application at a term of the County Court, he is deprived of no constitutional right. There is some force to this position as well as in another argument used by him, that the statute means the county judge as the embodiment of the County Court. We do not regard the question as free from doubt, because the statute says the appeal may be taken to the county judge of the county where the village is situated, while the only term available to the landowner might be held, as permitted by law, by the county judge of another county. (Const. art. 6, § 15.) We do not pass upon that question, however, as we think that the right of appeal provided by the statute fails to comply with the Constitution,

because it is so hampered by the requirement of a bond as in some cases to prevent the landowner from taking an appeal.

It is undoubtedly true, as was held by the General Term, that an assessment may be made in the first instance in any manner that the legislature sees fit to direct, provided that an unqualified and unfettered right of appeal is given whereby the damages may be ascertained in the manner required by the Constitution. (Dillon on Municipal Corporations, § 618; Tiedeman on Municipal Corporations, § 245; Cooley on Constitutional Limitations, p. 507; Lewis on Eminent Domain, § 457; 1 Bishop's New Criminal Procedure, §§ 893, 894.) If the primary method is constitutional, there is no right to an appeal except through the grace of the legislature. If it is unconstitutional, but an unhampered right of appeal is given, so that the landowner may have his damages assessed before one of the tribunals named in the Constitution, that is sufficient, for he is only entitled to one trial, provided it is before a lawful jury or before not less than three commissioners appointed by a court of record. If he acquiesces in the first award his rights are concluded, but if he takes the appeal, the new trial then had is the only one that the Constitution recognizes. It is regarded as a trial had upon his voluntary appearance and as the sole trial in the proceeding. The appeal, therefore, must not be one granted *ex gratia*, but as a matter of strict constitutional right, and hence so unshackled as to be freely enjoyed without regard to ability to give bail or pay costs. When the first trial provided by the statute is valid, the legislature can so restrict the privilege of appealing as it sees fit or can withhold it altogether. It is only when the appeal affords the only trial which accords with the Constitution that it must be given without any condition that the landowner may not be able to comply with. The authorities, therefore, which sustain the right to require bail or award costs on an appeal, after a trial by a constitutional method, do not apply to this case, for, as we have held, the first trial provided by the statute is not in accordance with the Constitution. An appeal that can be taken only upon the condition

of giving a bond in the penalty of two hundred and fifty dollars, with two sureties justifying in twice that amount, conditioned for the payment of the fees of the commissioners and the costs of appeal, provided the award of the jury is not "increased twenty dollars" to each party appealing, is not a reasonable regulation of procedure, as it may result in depriving the landowner of the right to appeal and hence of the right to any trial in accordance with the Constitution. In all cases where the fees and costs exceeded the value of the land, it might be a taking of the land without making any compensation whatever. The landowner cannot be compelled to pay any part of the expense of the proceedings to condemn his land. This was so held *In the Matter of the New York, West Shore and Buffalo Railway Co.* (94 N. Y. 287, 294), where an award made by commissioners appointed in condemnation proceedings under the General Railroad Act had been confirmed by the Special Term, but, on an appeal brought by the company, set aside by the General Term and new commissioners appointed, with costs against the landowners. This court said: "The only point remaining to be considered is the appeal from the judgment for costs rendered by the General Term against the landowners, on reversing the order of confirmation and appointing new commissioners, amounting to $120.70. We are of opinion that the General Term had no power to award these costs. If the appeal to the General Term had been taken by the landowners, and they had been defeated, it may be that the court could, in its discretion, have compelled them to pay the costs to which they had subjected the company by such an appeal. But the appeal was taken by the company because it was dissatisfied with the amount awarded, and was a continuation of the proceeding instituted by it to ascertain the compensation payable to the landowners, and to acquire their land against their will. In such a case to compel the landowners to pay any part of the expense incurred by the company for the purpose of ascertaining the compensation, which proceedings were an indispensable condition of its right to take the land, would

conflict with the constitutional right of the landowners to just compensation. They are entitled to the full amount of their damages when finally ascertained, and this amount cannot be diminished by allowing to the company its own expenses incurred in ascertaining it, or in endeavoring to reduce it. In the present case the costs allowed are small compared with the amount of the award, which was $35,000, but that can make no difference in the principle. If the company can recover against the landowner the expenses of proceedings carried on by it for its own benefit, where the award is large, it may do the same when the award is small; and a case may be supposed where the costs and expenses of the company would absorb a large part, or even the whole of the award. There is no warrant in the statute for awarding such costs, and if there were, it would be a violation of the constitutional right of the landowner."

We regard that case as analogous to the one in hand, so far as the point under consideration is concerned. There an award had been made, but set aside, so that, as the matter stood when costs were allowed, the damages had not been ascertained, and yet the landowners were charged with part of the expenses of ascertaining them. Here there was an invalid award, which stands for nothing, and an appeal in continuation of the proceeding to assess the damages is only allowed upon condition that a bond to pay the expenses of the assessment, in a certain contingency, is given by the landowner. He must appeal in order to get pay for his land. He may not be able to comply with the condition upon which an appeal is allowed, but if he does comply it may involve the payment by him of the expenses of the appeal, which must be regarded as a part of the proceedings to acquire his land. We think that an appeal, burdened with such a condition, is not a constitutional method of ascertaining the damages.

The judgment should be reversed and the proceedings set aside, with costs.

All concur, except ANDREWS, Ch. J., absent, and HAIGHT, J., dissenting.

Judgment reversed.