## In re STEELE.

(District Court, N. D. Alabama, S. D. November 9, 1907.)

1. BANKRUPTCY—COURTS OF BANKRUPTCY—POWER TO APPOINT REFEREES.

Where there are two district judges of a federal district, having equal and concurrent authority, one of such judges, sitting in bankruptcy within the district, the other judge being absent from the district, constitutes the court of bankruptcy, and has power to make a valid and binding appointment of a referee in bankruptcy, and the absent judge cannot subsequently come into the district, while the judge making the appointment is holding court therein, and without the latter's concurrence, set aside such appointment and remove the appointee from office.

2. COURTS—CONCURRENT JURISDICTION—IMPROVIDENT ORDER — VOID ACT OF JUDGE.

Where there are two district judges of a federal court having equal and concurrent authority, and one judge, who is not within the district at the time an order appointing a referee in bankruptcy is made by the other judge sitting in bankruptcy within the district, goes into the district in which the order was made for the sole purpose of setting aside said order, and makes an order setting same aside, said order so made is

without authority, and will be set aside as improvidently made and absolutely void.

In Bankruptcy. On motion to set aside improvident order removing a referee.

Sterling A. Wood, for petitioner.

HUNDLEY, District Judge. This is an application made to me by Nenian L. Steele, having been duly filed and presented on the 6th day of November, 1907, asking an order of this court setting aside an order made by Judge Thomas G. Jones on the 5th day of November, 1907, as having been improvidently made. The facts stated in the motion, and duly sworn to, are as follows:

"First. That on the 1st day of November, 1907, this court sitting in bankruptcy by its order entered upon its minutes, and a commission duly signed, appointed this petitioner a referee in bankruptcy for certain counties of the Southern Division of the Northern District of Alabama.

"Second. This petitioner duly qualified as such referee on the 4th day of November, 1907, by taking the oath of office and giving bond as provided by law, and entered upon the discharge of the duties of his office, and is now exercising the same.

"Third. That the petitioner at the time of his appointment and qualification was in all respects qualified and competent to discharge the duties of referee.

"Fourth. That at the time of petitioner's appointment by this court sitting in bankruptcy the district judge presiding thereat and making said order of appointment was the only and sole judge of this court then within or sitting in the Northern District of Alabama.

"Fifth. That at the time of the making of the order of appointment on November 1, 1907, the only other district judge of the United States at that time alleged to be entitled by appointment or designation to sit in the Northern District of Alabama was the Honorable Thomas G. Jones, who at the time of said appointment was not in the said Northern District of Alabama at all, but was at his home and residence in the city of Montgomery, in the Middle District of Alabama, in which district he is and was the sole and only resident judge, and was then sitting at Montgomery as the district judge of the Middle District of Alabama.

"Sixth. On the 5th day of November, 1907, the said Hon. Thomas G. Jones came from his place of residence in the city of Montgomery to the city of Birmingham, in the said Northern District of Alabama, and entered an alleged order removing the petitioner from his said office of referee. This order was made ex mero motu, without notice to, and in the absence of, this petitioner.

"Seventh. That, at the time the said alleged order of removal was made by said Hon. Thomas G. Jones, the judge of this court was then sitting and holding court for the said Northern District of Alabama, and did not sanction nor participate in, nor have knowledge of, the making of said order. That the said Hon. Thomas G. Jones came within the said Northern District of Alabama for the sole and only purpose of making said order, and, having made the same, returned to his home and residence in Montgomery, in the Middle District of Alabama, and that said visit of the said Hon. Thomas G. Jones was the only visit he has made to the said Northern District of Alabama since the appointment and qualification of the judge of this court."

I have given careful consideration to the lengthy opinion of the judge on making the order herein complained of, and which order not only seeks to revoke the order under which the petitioner was appointed and commissioned, but seeks to remove him from his office of referee. The conclusions reached in that opinion are based alone upon the contention that Judge Jones is still a judge in the Northern Dis-

trict of Alabama with equal authority and power as the judge of this court. An effort was made therein to judicially construe the act of Congress creating the judge of the Northern District of Alabama, and to determine whether or not the judge delivering the opinion is in fact a judge of the Northern District. In fine, the question is presented of a judge deciding the question of his own power to act or exist as a court. I have made diligent search of the text-books and decisions to find a precedent wherein a court could finally determine for itself whether or not it is a court. This identical question was well considered and decided in the case of Hill et al. v. Tarver, Recorder, 130 Ala. 595, 30 South. 499, in which the Supreme Court of Alabama in its unanimous opinion says:

"When the constitutional inquiry relates to the legality of the court which assumes to act— involving its power to act in any case—it is unnecessary to object preliminarily to its exercise of jurisdiction. In the very nature of things it could not determine the question of its own power to act or exist as a court."

See, also, High on Extraordinary Remedies, § 773.

I shall not attempt to review or decide that question, for two reasons: First, neither Judge Jones nor this court has the power to finally decide it; and, second, the question is not in reality involved in the case at issue. Conceding, therefore, for the purpose of this decision only, that there are two judges of the Northern District of Alabama, each with equal and concurrent authority, we have two questions and two only presented for determination in this proceeding: First. Can one of these district judges sitting in bankruptcy within the Northern District of Alabama, and while the other district judge is absent from the district, make a valid and binding appointment of a referee in bankruptcy without the concurrence of the other judge? Second. If the judge who is in the district makes such appointment while the other judge is absent from the district, can the absent judge come into the district, while the judge making the order is holding court therein, and set aside the appointment without notice to and without the concurrence of the other judge? The appointment of this petitioner was made under the authority afforded by sections 34 and 37 of the bankruptcy law. Act July 1, 1898, c. 541, 30 Stat. 555 [U. S. Comp. St. 1901, p. 3435]. That appointment was made without reference or regard to any other referees in bankruptcy, and was made because the business of the court demanded the appointment. The authority of the court of bankruptcy to appoint referees is confined in number only within the discretion of the court itself. This is clearly authorized by section 37 of the bankrupt law, which is as follows:

"Such number of referees shall be appointed as may be necessary to assist in expeditiously transacting the bankruptcy business pending in the various courts of bankruptcy."

Acting under this authority, some weeks since, I appointed W. C. McMillan, Esq., a referee in bankruptcy at Talladega, and had an order entered reappointing H. D. McCarty, Esq., a referee in bankruptcy at Anniston; the latter being a former appointee of Judge Jones. Although it has been some weeks since those appointments were

made, they have so far remained unchallenged. But the appointment of this petitioner is challenged by Judge Jones upon the grounds, as stated in his opinion, that the federal statute confides the appointment of referees to the courts, instead of to the judges, and concludes with the final declaration that "the power and authority are given to the court, and not to the judges." It is true that the authority is conferred by the bankruptcy law upon the "courts," and this necessarily brings us to the consideration of the question of what is the court.

The word "court" originally meant only a yard, palace, or garden, and according to Cowell it meant "the house where the king remained with his retinue; also the place where justice was administered." Anderson's Law Dictionary. So, in early history, the court meant the place where the king was domiciled, because the king was actually the fountain and dispenser of justice. The earlier courts were merely assemblages in the courtyard of the baron or of the king himself by those whose duty it was to appear at stated times or upon summons. This idea of the place predominating as the designation of a court caused Blackstone to adopt Coke's definition that "a court is a place where justice is judicially administered." 3 Blackstone's Commentaries, 24. Indeed, the Supreme Court of Alabama, in Ex parte Branch & Co., 63 Ala. 384, adopted the definition that a court is "a place where justice is administered." This definition has been held to be too narrow, and the definition given by a majority of judicial decisions is that:

"A court is a tribunal duly constituted, and present at the time and place fixed by law for judicial investigation and determination of controversies." 2 Century Dictionary, p. 1312; 8 A. & E. Encyc. of Law, p. 22.

A court is also held to be "an incorporeal being, which requires for its existence the presence of the judge." 8 A. & E. Encyc. of Law, p. 22; State v. Judges, 32 La. Ann. 1261; Lawyers Tax Cases, 8 Heisk. (Tenn.) 650; Mason v. Woerner, 18 Mo. 570; Hobart v. Hobart, 45 Iowa, 503; Matter of Terrill, 52 Kan. 29, 34 Pac. 457, 38 Am. St. Rep. 327. It has been further held that:

"The court is not the judge or judges as individuals, but only when at the proper time and place, they exercise judicial powers."

I fail to find a single case or authority wherein the judge is held to be the court, or a part of the court, while absent from the territory prescribed by law within which the court is required to be held. A statement of the law on this question is tersely made and discussed by the late Chief Justice Brickell in the case of Branch & Co., supra. The bankruptcy act itself defines, in section 1 thereof, what is meant by the word "court" in the following language:

" 'Court' shall mean the court of bankruptcy, in which the proceedings are pending, and may include the referee."

At the time I appointed this petitioner, were the proceedings pending in Huntsville in the Northern District, or were they pending in the Middle District, where Judge Jones was in fact at that time sitting as the district judge of the Middle District of Alabama? Was

it intended by Congress that the court of bankruptcy should be a divided court, with one judge sitting in one district, and another judge sitting at the same time without the district? Does the court follow the judge, or does the judge follow the court? If the court follows the judge, and two judges are sitting at the same time in different districts, which judge does the court follow? By the terms of the act of Congress, the jurisdiction of courts of bankruptcy is confined to "their respective territorial limits." Chapter 2, § 2, Bankruptcy Law. The courts have held that:

"Both time and place are essential constituents of the organization of a court; that is to say, in order to constitute a court, the officer must be present at the time and place appointed by law." 8 A. & E. Encyc. of Law, 24.

As shown above, the act of Congress fixes the territorial limits, and the federal law fixes the place where courts are held in this district. The "time and place appointed by law," in the case at bar, was in the Northern District of Alabama, and the officer now claiming to have been a part of this court at that time was not, in fact, within the territory of this court when this appointment was made. As is well said by Brickell, C. J., in the case of Branch & Co., supra:

"One of the guaranties of Magna Charta is that the court—the power of exercising judicial functions—should not migrate with the king, but should hold its sittings at the place and time fixed and settled."

Surely it will not be seriously contended that the court of bankruptcy is a migratory court, in view of the act of Congress confining its territorial limits within the several districts in which the court is held. The learned judge admits by his action in this matter that the court of bankruptcy is not a migrating court, but is in fact a court prescribed by territorial limits, for he did not seek to set aside the order appointing this referee until he had left his residence and court in the Middle District, and had come within the confines of the Northern District, of Alabama. If he did not intend to admit by his action this undoubted natural conclusion, it was wholly unnecessary for him to make a special visit to the city of Birmingham in the Northern District for the sole purpose of removing this petitioner from his position of referee in bankruptcy, for he could with equal impunity, and I might say with as much authority, have made his order while holding court within the Middle District in the city of Montgomery.

Again, it is claimed that this court cannot properly make an appointment without the assent of the other judge, because it takes both to comprise the court. The language authorizing the appointment of referees is identical, in terms, with the language prescribing the rights, powers, and duties of the court. Then it follows, if the contention made be true, that the concurrence of both judges is absolutely essential to the validity of every order or decree made by the court, and, if one of the judges should be absent or sick, the wheels of justice would immediately stop. Surely no court would contemplate such a narrow and unreasonable construction of the statute. But the very opinion of the learned judge himself is sufficient authority to justify the conclusion that the order removing the petitioner was improvidently granted. If, as is stated therein—"where both judges are of

equal authority and dignity, and neither judge is an associate judge, one judge cannot, without the consent of the other judge, properly make an appointment to which his colleague objects"—then it is equally true that one judge cannot make a removal to which his colleague objects. Again, it is conceded that both judges have concurrent jurisdiction. This being the case, it has been held with practical unanimity that, "where a judgment or decree has been rendered by a court of competent jurisdiction, it can only be reviewed by such methods as are provided by law, and no other court of concurrent jurisdiction has any power to modify, annul, or set aside such judgment or decree." 11 Cyc. 991, and numerous authorities there cited.. This well-known legal principle has been settled in no uncertain terms by numerous decisions of the federal and state courts. In the case of Young v. Montgomery & Eufaula R. Co., Fed. Cas. No. 18,166, which was a case decided by Justice Woods of the Circuit Court, sitting in the Middle District of Alabama, and in which case the question of the removal of a receiver appointed by a court of co-ordinate jurisdiction was passed upon, the court, in its opinion in that case, after citing numerous authorities, says:

"These authorities show that a question which is pending in one court of competent jurisdiction cannot be raised and agitated in another court; much less can one court assume to take possession of and administer property which is in the possession of another court and in course of administration by it. * * * No court or judge would be authorized to grant such a leave ex parte, and thus dispose of valuable rights and advantages of other parties, without at least giving them their day in court. * * * And no matter what showing the complainants may be able to make as to the incompetency, unfitness, or dishonesty of the receiver, this court cannot act. That showing must be made to the court which appointed him, and it must be asked to remove him. * * * This court does not sit to revise or review the proceedings of that court. Any motion, therefore, to appoint a receiver in this case, while the property to be administered is in the possession of a receiver appointed by another court, must be overruled, and this court can entertain no motion to remove or otherwise interfere with a receiver appointed by another court."

Reference is made by the learned judge in his opinion to my refusal to join him in making up a test case, for the purpose of having an adjudication as to whether or not he still remains a judge in this district. A sufficient answer to this proposition is that any such case made up by agreement between the judges would indeed be but a moot question, which any court before whom the matter was pending would promptly dismiss as such. This proposition is so well understood by bench and bar that citation of authority to sustain it is unnecessary. There is, however, a legal and orderly way in which all such questions may be raised for adjudication and settlement. That way is open to any litigant who should feel aggrieved at any decision or order made by the court or any judge thereof, but it cannot be raised or determined by the action of a judge ex mero motu, as in this matter. My jurisdiction and authority are subject to determination by an appellate tribunal alone, and it is not within my power to yield any part thereof to any other judge or court of co-ordinate jurisdiction. The petitioner is left without a remedy in this matter, save by virtue of the petition herein filed. The order of removal, made by the learned judge on November 5, 1907, was not made in the due course of any

legal proceeding before him, nor was anything brought before him by any person claiming to have been aggrieved. The case, if indeed it may be called a case, was one of his own making and without the knowledge of or notice to this petitioner, whose rights were at the time being passed upon. The whole proceeding was coram non judice and absolutely void, from which an appeal would not lie.

As is well known, upon my entering into the discharge of the duties of my office, I found every docket within this district greatly congested with undetermined cases. Except the one special visit of Judge Jones above alluded to, no other judge has been upon the bench in this district. As best I can, day and night, my time has been given unsparingly to the litigants before the court. At the time this' motion was presented to me the court was in session in Huntsville, and there are now so many pressing cases on my desk needing attention that I can illy spare the short time I have given to this matter.

From the facts sworn to in the petition, and from the law as above stated, I deem it to be my duty to entertain this petition and to grant the relief prayed. An order will be here made, setting aside the said order of removal of November 5, 1907, as being improvidently granted and without warrant of law. The clerk will enter the order hereto attached.