### In re STEELE.

(District Court, N. D. Alabama, S. D.    June 8, 1908.)

1. BANKRUPTCY—COURTS.

The act of Congress (Act July 1, 1898, c. 541, § 2, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420]) creating courts of bankruptcy provides for one court only within the territory prescribed.

2. SAME—JURISDICTION.

Courts of bankruptcy have no jurisdiction outside of their territorial limits as prescribed by the act of Congress creating them.

[Ed. Note.—Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

3. SAME—DISTRICT JUDGES—APPOINTMENT OF REFEREE.

A United States district judge, even though a judge of the Northern and Middle districts of Alabama, has no jurisdiction, while holding court in the Middle district thereof, to make an order appointing a referee in bankruptcy for the Northern district of Alabama.

4. SAME—JURISDICTION—RULES IN BANKRUPTCY.

A United States district judge, even though a judge of the Northern and Middle districts of Alabama and residing in the Middle district, has no jurisdiction or authority to go into the Northern district, while the judge of the said Northern district is holding court therein, and make an order appointing a referee in bankruptcy and prescribing a rule for the reference of proceedings in bankruptcy to said referee so appointed by him, without the concurrence of the judge of the said Northern district.

**5. SAME—VOID ORDER.**
    Such action by a district judge, even though a judge of both districts, being made without the concurrence of the judge of the Northern district, is coram non judice and void, in so far as the same applies to the Northern district: and the judge of the said Northern district has the right and authority to set aside any order or orders so made.

(Syllabus by the Court.)

In Bankruptcy.

See 156 Fed. 853.

Sterling A. Wood, for petitioner.

HUNDLEY, District Judge. The matter here presented is upon a sworn petition filed by Nenian L. Steele, a referee in bankruptcy heretofore appointed by this court, calling attention to the fact that the clerk of this court is proceeding, or is about to proceed, to refer one-half of the cases in bankruptcy filed in this court to Alex C. Birch, under and by virtue of what purports to be an order of this court appointing said Birch a referee in bankruptcy, and directing the clerk to make such reference to said Birch. Such appointment and order is averred to be absolutely void, and this court is asked to set the same aside as having been improvidently made. The facts stated in the petition, upon which relief is prayed, are as follows:

"(1) That on the 1st day of November, 1907, petitioner was duly and regularly appointed a referee in bankruptcy for certain counties in this district, and that he thereupon qualified, and has since the said time been such referee, having his office in the city of Birmingham, county of Jefferson, and state of Alabama, and that at this time he is the sole and only referee appointed for said counties of said district by the said court of bankruptcy.

"(2) That on the 1st day of June, 1908, Hon. Thomas G. Jones, a district judge of the United States, residing and presiding in the Middle district of Alabama, went upon the bench in the said city of Birmingham, county of Jefferson, and state of Alabama, and while upon said bench purported to sit as the court of bankruptcy for said Northern district of Alabama, and thereupon entered an alleged order purporting to appoint one Alexander C. Birch a referee in bankruptcy for the identical counties of the said Northern district of Alabama for which petitioner had been appointed previously by this court.

"(3) That the said Hon. Thomas G. Jones was at Montgomery, which was the place of his residence, and which was within the Middle district of Alabama, sitting and holding court in and for the said district until about the hour of half past 6 o'clock p. m., on Sunday, May 31, 1908, and that at said time, on said Sunday, May 31, 1908, the said Hon. Thomas G. Jones took passage on the Louisville & Nashville north-bound train and came to Birmingham, Ala., on the same, arriving at said Birmingham, Ala., at about half past 9 o'clock p. m. on said Sunday night, May 31, 1908, returning to said city of Montgomery, Ala., and to the said Middle district of Alabama, on the next through train on the said Louisville & Nashville Railroad, and which left said Birmingham, Ala., for said Montgomery, Ala., at about half past 8 o'clock a. m. on Monday, June 1, 1908. That the above 11 hours is all the time that Hon. Thomas G. Jones has been within the said Northern district of Alabama since November 5, 1907, when he was within the said district, and remained therein for a similarly short time, and for the purpose of attempting to remove this petitioner from his office as such referee, as set forth in another petition previously filed in this court of bankruptcy.

"(4) That the said Hon. Thomas G. Jones on the said June 1, 1908, at about the hour of 8 o'clock a. m., did go to the Government Building in the city of Birmingham, Ala., and did purport to open the court of bankruptcy therein,

and that the sole and only business transacted, or attempted to be transacted, or purporting to be transacted, at the said time and place, was the alleged appointment of one Alexander C. Birch as a referee of the court of bankruptcy in and for the said Northern district of Alabama.

"(5) That the first alleged order purports to have been made on 'this 30th day of May, 1908,' when, as matter of fact, the said Hon. Thomas G. Jones was not then within the said Northern district of Alabama, but was at said Montgomery, Ala., for and during said entire day, sitting and holding court for the Middle district of Alabama, and that he had no authority whatsoever as the court of bankruptcy for the Northern district of Alabama to make the said alleged order, and that the same was void and of no force or effect.

"(6) That the second alleged order was made at the time previously stated, on the 1st day of June, 1908, and that at the said time the judge of this court was not at his place of residence, the said city of Birmingham, Ala., but was at the city of Anniston, in the Eastern division of the said district, and was then and there sitting and holding court at the time provided in all respects as required by law, and that the said action of the said Hon. Thomas G. Jones was not known to this court, and was not participated in by the judge of this court, nor was the judge of this court advised that such would be done or attempted, nor was the concurrence of this court asked in the same in any respect whatsoever, and that said alleged order was void and of no force or effect.

"(7) That there is but one court of bankruptcy for the said Northern district of Alabama, and that, under the provisions of the act of Congress relating to bankruptcy, such court of bankruptcy is authorized to 'appoint referees, each for a term of two years, and may, in their discretion, remove them because their services are not needed, or for other cause,' and that the said Alexander C. Birch was not appointed by the said court of bankruptcy for the Northern district of Alabama.

"(8) That in and by the said alleged orders of the said Hon. Thomas G. Jones he has purported to direct the clerk of this court to refer every odd-numbered case in bankruptcy to the said Alexander C. Birch, and, if the interposition of this court is not invoked, that the said odd-numbered cases, which would otherwise be referred to this petitioner, who is entitled to the emoluments thereof, will be referred to the said Alexander C. Birch, and that the said Birch is not a referee of this court in truth and in fact."

Copies of the orders referred to in the petition are made exhibits thereto.

The fact that such purported order or orders, as above set forth, were made by a United States district judge claiming to be a judge of this court, necessarily surrounds the questions presented with some embarrassment not generally arising in courts of justice, when called upon to modify, revise, or reverse the decisions of other judges or courts. More especially is this the case when the matter has reference to an officer of the court, for whose conduct the judge is at least morally responsible. However this may be, the Constitution and laws of the United States necessarily place the responsibility to act upon all judges to whom parties feeling aggrieved have the right by law to apply. I cannot under my oath of office decline to assume the responsibility which the law places upon me. I cannot delegate my jurisdiction to any other judge. I cannot divide my jurisdiction with any other judge. I cannot, with due respect to the office I hold, decline to act when it is my duty to act; nor can I yield this duty to others, however eminent they may be. I cannot silently permit another to assume the jurisdiction in my court which the law places upon me. The law defines my jurisdiction, the law defines my right

and authority, and the law alone shall be the beacon to guide my footsteps in seeking rightfully to determine this matter.

As shown by the facts stated in the petition, an effort is made by the learned judge to create another referee in bankruptcy in this court, without the knowledge or concurrence of the court itself. This is sought to be done, first, by an order purporting to have been made while that learned judge was holding court in another district; and, second, by filing that order, thus purporting to have been made, in this district on Sunday night, May 31, 1908; and then, finally, by entering an order about 8 o'clock Monday morning, June 1, 1908, ratifying the making of the previous order in another district. These various efforts at effecting the appointment of a referee and designating the manner in which the business of this court shall be referred to him were all made, or attempted to be made, at a time when the judge of this court was engaged in holding a regular term of this court in another division of this district and at a time fixed by law.

It is unnecessary, in so far as the decision of the questions presented by this petition is concerned, to pass upon the question of whether or not the learned judge making the orders above referred to is still a judge of this district. It is unnecessary to decide whether the act of Congress, creating the judge of the Northern district of Alabama and designating his place of residence as the city of Birmingham, in said district, makes him the sole judge of this court or not. It is unnecessary to decide in this proceeding whether or not Congress, in carrying out the general provision of the federal statute that "a district judge shall be appointed for each district," did in fact and in law provide for one judge of the Northern district of Alabama. Any expression of opinion here upon that question would be mere dictum. However that matter may be determined finally, the jurisdiction and authority of this court are expressed in no uncertain terms in the act of Congress. Act Feb. 25, 1907, c. 1198, 34 Stat. 931 (U. S. Comp. St. Supp. 1907, p. 187). The language of that statute is that the district judge for the Northern district of Alabama "shall possess and exercise all the powers conferred by existing law upon the judges of the District Courts of the United States, * * * and the same powers and perform the same duties within the said Northern judicial district of Alabama as are now possessed by and performed by the district judge of the United States in any of the judicial districts established by law." Thus it will be seen that by the very terms of the statute the judge of the Northern district of Alabama possesses ample power and authority to appoint or remove a referee in bankruptcy, if any other "district judge of the United States in any of the judicial districts established by law" has such power. That district judges generally possess such power cannot be seriously questioned.

The principle in this case is not materially different from the case of In re Steele (D. C.) 156 Fed. 853. The opinion in that case was rendered by the judge of this court on the 9th day of November, 1907, and has remained to this day the law of the case, so far as this district is concerned. That decision has not been overruled, ques-

tioned, denied, or modified by any judicial authority. In that case it was decided that the court of bankruptcy is not a migratory court, with one judge sitting in one place and another judge sitting in another place, but it is a court whose domicile and territorial limits are fixed by law, and that both time and place are essential constituents of the organization of such court, and, further, that in order to constitute such court the officer must be present at the time and place appointed by law. In the case at bar the place fixed by law is within the territorial limits of the Northern district of Alabama, where the judge of this court was presiding in fact at the time fixed by the statute. It was also held in the Steele Case, supra, that any order made by the learned judge, affecting the Northern district, while holding his court in the Middle district, was coram non judice and absolutely void, in so far as its binding effect upon this court is concerned. The court of bankruptcy is a statutory court. Its jurisdiction, personnel, and territorial limits are prescribed by statute. So much of the statute as applies to the question now under discussion is as follows:

"Sec. 2. That the courts of bankruptcy as hereinbefore defined, viz., the District Courts of the United States in the several states, * * * are hereby made courts of bankruptcy, and are hereby invested, within their respective territorial limits as now established, or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, in vacation, in chambers and during their respective terms, as they are now or may be hereafter held. * * *" Act July 1, 1898, c. 541, § 2, 30 Stat. 545 (U. S. Comp. St. 1901, p. 3420).

The wording of this statute, ex vi termini, makes plain and uncontrovertible two facts: First, there is created one court of bankruptcy in each judicial district in the United States, composed of the "District Courts" therein; second, these "courts of bankruptcy" are invested with jurisdiction at law and in equity "within their respective territorial limits" only. It will be noted that nowhere does the statute fix the number of judges which shall comprise the court; and, construing this statute in connection with the general provision for the organization of District Courts, viz., that "a district judge shall be appointed for each district, except in cases specially provided" (4 Fed. St. Ann. § 551, p. 216 [U. S. Comp. St. 1901, p. 446]), it would seem plain that the bankruptcy law also provided for only one judge of the bankruptcy court in each judicial district. A different construction from this might be made, perhaps, in districts where there is created "an additional judge," required to possess "the same powers and perform the same duties and receive the same salary as the present district judge of said district," as is the case in five of the judicial districts in the United States; but upon this question I express no opinion. Such, however, is not the case here, where the powers and duties of the judge of this court are not limited to the powers and duties conferred upon any other judge in this district, but are coequal and coexistent with those of "the judges of the District Courts of the United States." Act Feb. 25, 1907, supra. Hence the power of the judge of this court of bankruptcy must be coequal and

coexistent with the powers and duties of the judges created under the general provision, under which "a district judge is appointed for each district." 4 Fed. St. Ann. p. 216.

In so far as the District Courts of the United States are referred to in the bankruptcy law, it is plain that not alone is there created one court of bankruptcy, and one only, for each district, but there is only one judge provided for each district. The court of bankruptcy is frequently mentioned in the law, and so is the judge, and without exception, wherever "judge" is referred to, it is always as "the judge." The singular noun is used, and never the plural. Under chapter 4 of the act (Act July 1, 1898, c. 541, 30 Stat. 551 [U. S. Comp. St. 1901, p. 3429]), which is devoted to "courts and court procedure," it is provided (1) that "the judge" shall direct the process; (2) "the judge" shall determine the issues presented by the pleadings; (3) "the judge" shall make the adjudication or dismiss the petition; (4) "the judge" shall refer the case to the referee, unless he is absent from the district or the division in which the petition is pending; (5) "the judge" may cause the trustee to proceed with the administration of the estate; and so on throughout the whole act wherever it is necessary to refer to the judge of the court of bankruptcy. Clearly, if it were intended that there should be more than one judge of the court of bankruptcy, reference would have been made to "any of the judges," or "the judges," rather than "the judge"; or, if it were the intention of Congress to confer jurisdiction in certain cases upon more than one judge, the statute would have read "the judge or judges."

The first alleged order made by the learned judge, appointing Birch a referee, was made at Montgomery, Ala., in the Middle judicial district, while the learned judge was presiding as judge of the court of that district, and while the judge of this court was presiding in the Northern district. In so far, therefore, as concerns the question here presented, it is immaterial whether there is one or two judges of the bankrupt court for the Northern district of Alabama. It may be admitted, then, for the purposes of this decision, that the court is composed of two judges, with equal jurisdiction and authority. As above stated, the territorial limits of the court of bankruptcy are strictly defined by the statute whenever reference is made thereto. The limits are also strictly defined with relation to the appointment of referees. Section 34 of the act of Congress relating to bankruptcy provides as follows:

"Sec. 34. Courts of bankruptcy shall, within the territorial limits of which they respectively have jurisdiction: (1) Appoint referees, * * * and may in their discretion, remove them because their services are not needed or for other cause."

It is evident, therefore, that the power to appoint is limited within the territorial limits of the court.

It is too plain to require argument that the "court" must appoint the referee, and not "the judge." This was admitted by the learned judge himself at the time he made the alleged order removing referee

Steele from office in November last. It was decided in the Steele Case, supra, that time and place is an essential element of all courts, and more especially is this the case where the territorial limits of the court are prescribed by statute, as is the case here. Can it be contended seriously that, while holding the court of the Middle district in Montgomery, the learned judge was, either in fact or in law, the court of bankruptcy for the Northern district? Says the court in Ex parte Gardner, 22 Nev. 280, 39 Pac. 570:

"A judge alone does not constitute a court. Proceedings at another time or place or in another manner than specified by law, though in the personal presence and under the direction of the judge, are coram non judice and void."

In the case of Johnston v. Hunter, 50 W. Va. 52, 40 S. E. 448, it is held that:

"The proceedings of a court at a time and place other than that prescribed by law are void. It is not the act of a court at all."

See, also, on this point White County Commissioners v. Gwin, 136 Ind. 562, 36 N. E. 237, 242, 22 L. R. A. 402, and In re Steele (D. C.) 156 Fed. 853.

In the case of People v. Village of Haverstraw, 151 N. Y. 75, 45 N. E. 384, it was held, that:

"A court is a tribunal organized according to law and sitting at fixed times and places for the administration of justice not an individual holding a judicial office."

Again, the bankruptcy law (section 1, subd. 7) prescribes that " 'court' shall mean the court of bankruptcy in which the proceedings are pending." Were the proceedings pending in the Northern district, where the judge of this court was holding at the time a regular term of this court, or were they pending in the Middle district? If they were pending in the Middle district, then the learned judge was holding two courts at one and the same time and in two different districts. By what statute, rule of law, or judicial decision can this be sustained or justified? I confess I have searched the books in vain for an answer. The conclusion, therefore, is inevitable that this order, or alleged order, complained of, was absolutely void. But it may be contended that the filing of this order, or alleged order, with the clerk of the court for the Northern district of Alabama on Sunday night gave life and legal effect thereto. The mere filing of a paper cannot add life or validity to a void and illegal act. To hold otherwise would be to clothe the clerk who filed it with judicial power.

I now come to the consideration of the further action of the learned judge in proceeding to the Government Building in the city of Birmingham on the morning of June 1st at about 8 o'clock, and signing and filing what purports to be an order of this court appointing Alex C. Birch a referee in bankruptcy, and specifying that his term of office shall begin on May 30th, two days preceding. An effort is made therein to ratify the first appointment, made in Montgomery, May 30th, and the filing of the same on Sunday night, May 31st. It is evident, from reading the order of June 1st, that an attempt is made

therein to relieve the order made by the learned judge on May 30th from an application of the rule of law settled and decided in the Steele Case, supra, and the many authorities cited herein. The act of the learned judge in seeking to make an order of this court on June 1st, while the judge of this court was at the time engaged in holding a term thereof in another division of this district, presents a strange and anomalous situation, as is shown by the records of this court and by the decision and opinion of the learned judge himself. On the 1st day of November, 1907, I appointed Nenian L. Steele, Esq., a referee in bankruptcy for the Southern division of the Northern district of Alabama, and on the 5th day of November, 1907, the learned judge had an order entered removing said Steele and revoking and annulling the former order made by me appointing him. At the time this order of removal and revocation was made the learned judge handed down a written opinion, in which he said:

"Where there are more district judges than one in a district, which is frequently the case, the majority of the judges constitute the court, and they alone have authority to speak for the court in the matter of the appointment of a permanent officer of the court, though, when one judge is absent and nothing is said in the minutes as to the wishes of the other, it is legally presumed that the order speaks the will of both. One judge cannot make an appointment unless he is the sole judge of the district. If there be another judge, as is the case here, where both are of equal authority and neither judge is an associate judge, one judge cannot, without the consent of the other judge properly make an appointment to which his colleague objects, and thus, in a collateral way, attack the authority of his colleague. The judge whose jurisdiction is thus attacked must by silence and inaction waive or abandon his jurisdiction in the district or defend it, and it seems to me that the most proper way to deal with the revoked order is to pursue the course which has been taken."

Regardless of the conclusions reached in this opinion, and applying—in this particular case, and only in so far as this particular case is concerned—that deliverance of the learned judge himself, if for no other reason, I am justified in revoking and annulling the alleged order or orders appointing Alex C. Birch a referee in bankruptcy of this court. Adopting the language of the learned judge expressed in that same opinion:

"Each judge must act upon his own convictions of the law. * * * No fault can be found with either in this respect."

With the exception of a short term of court held by me in the state of Florida, I have been almost continuously upon the bench in this district since my appointment and qualification on the 10th day of April, 1907. The learned judge has not held court a single day in this district during that time, nor has he tried a single case. His only presence in the district was to order the removal of Nenian L. Steele, Esq., a referee in bankruptcy appointed by me, as set forth above, and to attempt to make the appointment of Alex C. Birch as referee by entering the orders complained of in this petition. On assuming the duties of my office, I found the dockets of every division of my district greatly crowded, and, save in the Southern division, I have by persistent work succeeded in catching up with the business of the

court in all its branches. The business of the court of bankruptcy in the Southern division of this district is large and important. The referee in bankruptcy, under the bankruptcy law, may be a part of the court itself. In order, therefore, properly and promptly to dispose of this large amount of important business, it is absolutely essential that the referee should not be a person hostile or offensive in any way to the court. It is also essential to the orderly and speedy transaction of the business of the court that the orders made by me shall remain as made. If the learned judge can leave his district and court, and come into my district, as may suit his purpose or desire, and change, without my knowledge or consent, orders and rules in bankruptcy made by me, then the public business will be seriously disturbed; and I cannot and shall not sit by idly and permit such things to be done, when my attention is directed thereto in due form. If the learned judge is permitted by me to come within my district and make an order, which requires one-half of the bankruptcy cases to be referred by the clerk of my court to such person as may suit his fancy, and that, too, even when I am in the division, which order is in direct conflict with the very letter of section 18 of the bankruptcy law, then I must confess myself utterly impotent to discharge the duties which the law imposes upon me. Whether the learned judge is a judge of this district or not is immaterial. At least, while I am within the district and he is without the district, my decrees and orders are supreme, subject only to review by an appellate court, and the law confers upon me the power to set aside any orders in bankruptcy made by him, whether they are valid or void.

The clerk will enter the order I now file upon the minutes of this court, and he must proceed without delay to refer all such matters as are designated by the order to Nenian L. Steele, Esq., the referee in bankruptcy of this court for the Southern division of the Northern district of Alabama, except when I am within this division, when the same will be referred by me, as provided by section 18 of the act of Congress establishing a uniform system of bankruptcy throughout the United States.

The order made by the learned judge, seeking to appoint Alex C. Birch a referee in bankruptcy for this court, was improvidently made, and the same is set aside and annulled, as being without authority of law and absolutely void.